**BRUNSWICK CORPORATION,**
**Plaintiff-Appellee,**

**v.**

**David D. JONES, Jr.,**
**Defendant-Appellant.**

**No. 85–2980.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1986.
Decided Feb. 24, 1986.*

* We released the opinion in this expedited appeal in typewritten form consistent with the time requirements incidental to such appeals.

Joseph D. McDevitt, Borgelt, Powell, Peterson & Frauen, S.C., Milwaukee, Wis., for defendant-appellant.

Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, RIPPLE, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Brunswick Corporation ("Brunswick") brought this diversity action, governed by Wisconsin law, against David D. Jones, Jr., seeking preliminary and permanent injunctions to enforce a covenant not to compete, and damages for losses allegedly incurred by Brunswick as a result of Jones's use of its confidential information. Jones appeals from a preliminary injunction that precludes him from working for U.S. Marine Corporation ("U.S. Marine") until May 31, 1986. He argues only that Brunswick did not demonstrate a substantial likelihood of success on the merits. For the reasons stated below, we will affirm.

I

Jones worked for Mercury Marine, one of Brunswick's eight divisions, from September 1975 through November 1984. Mercury Marine leads the boating industry in the stern-drive propulsion market in both sales and expenditures for research and development of new products.

Jones initially served as Director of Product Management for Mercury Marine's

MerCruiser division, which carried a stern-drive product line. After a corporate reorganization, he assumed the title of Director of Product—MerCruiser. In this capacity, he had access to projects for new products in all of Mercury Marine's product lines. In particular, he was involved in the development of Mercury Marine's jet drive and was one of the leading proponents of developing a new stern drive.

While at Mercury Marine, Jones chaired a task force that was responsible for Mercury Marine's marketing strategy for all of its product lines. As task force chairman, he acquired confidential information concerning Mercury Marine's financial performance and projections, and marketing strategies. He attended strategic planning sessions at Mercabo, Florida in 1983 and 1984. In June 1984, he was a co-leader for the preparation of a three-year plan for Mercury Marine's product lines from 1985 to 1987.

As part of his employment contract with Brunswick, Jones signed a covenant not to compete, which provided in pertinent part that:

> During the term of my employment with Brunswick and for a period immediately after termination of said employment equal to the number of months my employment shall have continued (but not less than six nor more than eighteen months after such termination), I will not directly or indirectly accept employment with or render services on behalf of a competitor of Brunswick, or any other third party in any capacity where the confidential information of Brunswick acquired by me during my employment with Brunswick would reasonably be considered to be useful to the competitor or to such other third party to become a competitor based in whole or in part on such information.

Jones resigned from Mercury Marine as of November 30, 1984, and accepted employment with the Homelite Division of Textron Corporation as Vice President of Engineering. He worked for Textron from December 1984 through May 1985. In June 1985, however, he started employment as General Manager of U.S. Marine.

U.S. Marine manufactures outboard motors. It sells them to Bayliner Marine Corporation ("Bayliner"), an affiliated corporation that builds boats; other boat manufacturers, and Montgomery Ward. U.S. Marine has over 1,000 dealers that sell and service its products. It competes with Mercury Marine in the outboard-motor market. U.S. Marine also is developing a stern-drive unit, scheduled for marketing in the fall of 1986, that will compete with Mercury Marine's stern-drive systems. During his first months with U.S. Marine, Jones participated in the development of U.S. Marine's long-term marketing approach, and its three-year products plan for outboard motors, stern-drive motors, and engine accessories. He also reviewed test reports and production schedules for U.S. Marine's stern-drive project.

On August 23, 1985, Brunswick, having learned that Jones was working for U.S. Marine, initiated this lawsuit. On October 31, 1985, the district court preliminarily enjoined Jones "from accepting or continuing direct or indirect employment with, or rendering services on behalf of, U.S. Marine Corporation or Bayliner Marine Corporation, or any other competitor of the Mercury Marine Division ... of Brunswick Corporation to whom the confidential information of Mercury Marine acquired by him during his employment by Mercury Marine would reasonably be considered to be useful" until May 31, 1986. It further enjoined Jones "from divulging to anyone or making use of information acquired by him during his employment by Mercury Marine relative to any of Mercury Marine's ... confidential information."

## II

Brunswick bears the burden of establishing the five elements necessary for the issuance of a preliminary injunction: (1) that it has no adequate remedy at law; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm it will suffer if the preliminary injunction is not granted is greater than the irreparable harm the de-

fendant will suffer if the injunction is granted; (4) that it has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest. *See Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1432 (7th Cir.1986); *Roland Machinery Co. v. Dress-er Industries*, 749 F.2d 380, 382–88 (7th Cir.1984).[1] The district court found that Brunswick had satisfied each factor, and granted the injunction. On appeal, Jones challenges only the district court's finding that Brunswick has a reasonable likelihood of prevailing on the merits.[2]

1. A panel of this court recently has stated that a preliminary injunction may be granted "if but only if $P \times Hp > (1-P) \times Hd$," where P represents the probability that the denial of an injunction would be erroneous (which is the probability that the plaintiff would win at trial); Hp, the irreparable harm the plaintiff would suffer if the injunction is not granted; and Hd, the irreparable harm the defendant would suffer if the injunction is granted. *See American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593 (7th Cir.1986). At first glance, it might appear that this formula differs from the traditional test enunciated in *Roland Machinery*, 749 F.2d at 382–88, in three ways. First, it might seem that *American Hospital*'s formula does not require that the plaintiff establish that it has no adequate remedy at law. Second, whereas the traditional test requires that the plaintiff show some certain likelihood of prevailing on the merits (however low that likelihood must be), it might appear that *American Hospital*'s balancing formula does not require the plaintiff to demonstrate any particular likelihood of success on the merits. Such a difference would become important when the plaintiff possessed an extremely low likelihood of winning at trial, but would suffer a very large irreparable harm if an injunction were denied, and the defendant would suffer a relatively small irreparable harm if the injunction were granted. Under the traditional test, an injunction would not issue because the plaintiff could not show a sufficient likelihood of success on the merits; however, it might appear that, according to *American Hospital*'s balancing formula, the injunction would issue because the balance of harms, discounted by the probabilities that they would be mistakenly incurred, would favor the plaintiff. Third, whereas the traditional test requires that the balance of harms favors the plaintiff *and* that the injunction not harm the public interest, it might seem that *American Hospital*'s algebraic formula alone does not require that the injunction be in the public interest. It was suggested that the harms suffered by third parties can be added to Hp and Hd as the case may be. *American Hospital*, at 593, 601–02. Even so, this would appear to permit the granting of a preliminary injunction which would be against the public interest when the balance of harms favors the plaintiff to a greater degree than the injunction would harm the public interest.

Nonetheless, appearances are deceiving. *American Hospital*'s author, who also wrote the thoughtful and exhaustive opinion in *Roland Machinery*, made it clear that the algebraic formula "is not offered as a new legal standard." *American Hospital*, at 593. In our most recent opinion, which thoroughly considered the district court's discretion in deciding whether to grant a preliminary injunction and our deferential review of the district judge's discretionary decision, we noted that *American Hospital* does not set forth a new standard for granting preliminary injunctions. *See Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433–1436 (7th Cir.1986). *American Hospital*'s formula "is actually just a distillation of the familiar ... test that courts use in deciding whether to grant a preliminary injunction." *American Hospital*, at 593.

As a distillation, the formula admirably reflects the balancing of irreparable harms inherent in the traditional test. However, a formula, of necessity, cannot incorporate all of the elements of the traditional test. We note, therefore, that before the district court balances the irreparable harms suffered by the parties, the plaintiff still must establish the other prerequisites to the issuance of a preliminary injunction —namely, that the plaintiff has no adequate remedy at law; that it has a reasonable likelihood of prevailing on the merits; and that an injunction would not harm the public interest.

2. Our standard of review of the grant of a preliminary injunction is whether the district court abused its discretion. *See Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1436–39 (7th Cir.1986). Whether the plaintiff can demonstrate a reasonable likelihood of prevailing on the merits, however, often requires determination of a question of law. In this case, Brunswick's likelihood of success on the merits depends upon the legality of the restrictive covenant under Wisconsin law. As is the case for all questions of law, we will review de novo the validity of the restrictive covenant. Because an error of law by the district court constitutes an abuse of discretion, *see American Can Co. v. Mansukhani*, 742 F.2d 314, 326 (7th Cir.1984), should we find that the district court made a mistaken legal determination when assessing the plaintiff's likelihood of success on the merits, we will independently review the district

■ Although the plaintiff must demonstrate some probability of success on the merits, "the threshold is low. It is enough that 'the plaintiff's chances are better than negligible....' " *Id.* at 387 (quoting *Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982)). As we observed in *Roland Machinery*, 749 F.2d at 387–88, the degree of likelihood of prevailing on the merits that the plaintiff must demonstrate decreases the more heavily the balance of harms weighs in its favor.

■ In this case, the balance of irreparable harms weighs heavily in Brunswick's favor. Jones possesses confidential information concerning Brunswick's engineering failures and successes, financial performance and projections, and marketing plans. Access to such information could enable a competitor to cut the time and costs required to develop a new product by avoiding engineering blind alleys. It would permit a competitor to preempt Brunswick's new products before they reached the market. It would allow a competitor to determine how aggressively it should price its products. For these reasons, the district court concluded that Jones's employment with U.S. Marine likely would cause Brunswick irreparable losses.

With respect to Jones, the preliminary injunction would bar him from working for U.S. Marine or another competitor to whom Brunswick's confidential information would be useful until May 31, 1986. Jones, however, is very employable, as his resume and his position with Textron Corporation demonstrate. Brunswick also posted bond in the amount of $200,000 in the event the preliminary injunction was issued erroneously. Thus, it is unlikely that the preliminary injunction will cause Jones irreparable

harm. Because the balance of irreparable harms weighs heavily in Brunswick's favor, Brunswick need establish only a modest likelihood of success on the merits. *See Roland Machinery*, 749 F.2d at 387.

■ Wisconsin law governs the merits of this diversity action.[3] Wis.Stat. § 103.465 provides:

> A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.

Jones does not challenge the duration or the geographic scope of the covenant. He argues only that it is overbroad, and, therefore, not reasonably necessary to protect Brunswick.

Again, the covenant not to compete prohibits employment with "a competitor of Brunswick, or any other third party in any capacity where the confidential information of Brunswick acquired by ... [Jones] during ... [his] employment with Brunswick would reasonably be considered to be useful to the competitor or to such other third party to become a competitor based in whole or in part on such information." Jones notes that the phrase "a competitor of Brunswick" is followed by a comma, which is "a mark of separation within the sentence generally indicating a slight pause," *Webster's Third New International Dictionary* 455 (1976), and the word

judge's legal conclusions upon which the preliminary injunction was based. *See Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir.1982).

**3.** As an unincorporated division, the citizenship of Mercury Marine is that of the corporation of which it is a part. *See Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986). Brunswick is a Delaware corpo-

ration and has its principal place of business in Illinois. Jones is a citizen of Wisconsin. Thus, complete diversity exists.

Both parties have argued that Wisconsin law governs. Because the contract was performed within Wisconsin, we see no reason to disturb this stipulation. *See Prudential Insurance Co. of America v. Sipula*, 776 F.2d 157, 161 (7th Cir. 1985).

"or," which is a "disjunctive particle used to express an alternative," *Black's Law Dictionary* 987 (5th ed.1979). From this reading, he argues that the qualifier "where the confidential information acquired by ... [Jones] during ... [his] employment with Brunswick would reasonably be considered to be useful" applies only to "any other third party," and not to "a competitor of Brunswick." He asserts, therefore, that the covenant bars "employment *either* with 'a competitor of Brunswick' *or* with 'any other third party in any capacity where the confidential information of Brunswick would reasonably be considered to be useful.'" Appellant's Brief at 6 (emphasis in original). In his view, the covenant is overbroad because it prohibits employment with any competitor of Brunswick, regardless of whether the confidential information would be useful to the competitor. He concludes that the covenant, being overbroad, is void in its entirety.

▮ We disagree. The covenant not to compete must be read as a whole. *See Crown Life Insurance Co. v. LaBonte,* 111 Wis.2d 26, 36, 330 N.W.2d 201, 206 (1983); cf. *Schwerman Trucking Co. v. Gartland Steamship Co.,* 496 F.2d 466, 475 (7th Cir. 1974) ("It is elementary that all language in a written instrument must be considered.") Read as a whole, the covenant is clear and unambiguous. The phrase "to the competitor or to such other third party to become a competitor based in whole or in part on such information," which follows the qualifier "where the confidential information of Brunswick acquired by ... [Jones] during ... [his] employment with Brunswick would reasonably be considered

to be useful," demonstrates that the qualifier applies to both "a competitor of Brunswick" and a third party to become a competitor based on the use of the confidential information.

The comma following the phrase "a competitor of Brunswick" serves a purpose, but not the purpose Jones ascribes to it. Without the comma, the covenant could be read to prohibit employment with "a competitor of Brunswick or any other third party...." Such language would suggest that Jones could not work for a competitor of any other third party. The use of the comma avoids this suggestion. Thus, the comma does not indicate that the covenant bars employment with any competitor of Brunswick.

▮ We therefore conclude, as the district judge did, that the covenant bars employment with any competitor to whom the confidential information acquired by Jones during his employment with Brunswick would reasonably be considered to be useful, and with any third party to become a competitor based on the use of the confidential information to whom Brunswick's confidential information would reasonably be considered to be useful.[4] Thus, the covenant protects Brunswick against a present or potential competitor from using its confidential information. We hold that the covenant is reasonably necessary for the protection of Brunswick.[5] *See Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis.2d 460, 469, 304 N.W.2d 752, 756–57 (1981) (confidential business information, whether or not it is a trade secret, is "a proper subject of protection by restrictive covenant"). According-

---

4. Because the covenant not to compete is clear and unambiguous, we need not resort to rules of construction to resolve ambiguities. Even were we to find the covenant ambiguous, however, we would read the qualifier "where the confidential information of Brunswick acquired by ... [Jones] during ... [his] employment with Brunswick would reasonably be considered to be useful" to apply to "a competitor of Brunswick," consistent with the Wisconsin Supreme Court's command that covenants not to compete are to be construed narrowly. *See Streiff v.*

*American Family Mutual Insurance Co.,* 118 Wis.2d 602, 610–11, 348 N.W.2d 505, 510 (1984).

5. Jones also argues that the covenant is unreasonable with respect to him. We disagree. Because Jones worked only for Brunswick's Mercury Marine division, the covenant bars him until only May 31, 1986, from working for only those present and potential competitors of Brunswick in the boating industry. Given his marketability, the covenant is reasonable with respect to Jones.

ly, we agree with the district court that Brunswick established a reasonable likelihood of prevailing on the merits.

### III

For the reasons stated above, the grant of the preliminary injunction is

AFFIRMED.