Marilyn JONES, Plaintiff,

v.

Dick W. BOWMAN, et al., Defendants.

Cause No. S87-289.

United States District Court,
N.D. Indiana,
South Bend Division.

June 16, 1987.

Stephen G. Drendall, South Bend, Ind., Richard A. Waples (Legal Director, Indiana Civil Liberties Union Fdn., Inc.) Indianapolis, Ind., for plaintiff.

John D. Ulmer, Goshen, Ind., for defendants.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for Stephen E. Platt.

MEMORANDUM AND ORDER

MILLER, District Judge.

Plaintiff Marilyn Jones brings this suit for injunctive relief and monetary damages due to a strip search performed upon her in September, 1985, followed by seven days' custody on a civil attachment before being taken to court. Her motion for preliminary injunction was heard on June 4, 1987. This memorandum opinion is intended as compliance with the requirements of Rule 52(a), Fed.R.Civ.P.

The court concludes that because Ms. Jones has shown neither continuing, present, adverse effects of her 1985 strip search at the hands of Elkhart County Sheriff personnel nor any likelihood that she will be subjected to another strip search in the future, she has no standing to maintain a claim for a preliminary injunction against the sheriff's strip search poli-

cy. The court further concludes, for the same reasons, that she has no standing to maintain a claim for a preliminary injunction against the failure to bring persons arrested on civil attachments into court within a reasonable time.

## I.

Ms. Jones brings this action pursuant to 42 U.S.C. § 1983, naming as defendants Richard Bowman (who was Sheriff of Elkhart County during Ms. Jones' search and detention), the Office of Sheriff of Elkhart County,[1] Hon. Stephen Platt, Judge of the Elkhart Superior Court, and unknown staff members of the Elkhart Superior Court. Jurisdiction is proper under 28 U.S.C. § 1343.

## A.

In January, 1983, Ms. Jones (then named Marilyn Rabius) filed a proceeding in Elkhart Superior Court No. 2 to enforce an Ohio child custody decree. Judge Platt presides over Elkhart Superior Court No. 2. Several hearings were held before April 11, 1984, when Ms. Jones' former husband petitioned for an emergency custody order. In response to that petition, Judge Platt ordered Ms. Jones to appear before him at 1:30 p.m. on May 7, 1984, to show cause why she should not be punished for violation of the court's earlier orders. On May 2, 1984, Ms. Jones' attorney moved to withdraw his appearance, and Judge Platt set the hearing on that motion for May 7 at 1:30, stating for the record that "failure of the wife to appear on that date will result in a body attachment".

Ms. Jones did not appear on May 7, 1984. Judge Platt issued a body attachment without bond.[2] Later that month, at another hearing at which Ms. Jones failed to appear, Judge Platt modified the custody order, granting custody to Mr. Rabius and

ordering Ms. Jones to pay support in a weekly sum of $30.00.

## B.

On September 23, 1985, the Sheriff of Johnson County, Indiana arrested Ms. Jones on the body attachment, and held her until September 25, when Elkhart Sheriff's deputies arrived to take her into custody. At the time of her arrest, Ms. Jones was on bond on a criminal confinement charge in Johnson County; she was charged with, and later convicted of, confinement of her son.

Ms. Jones was driven, shackled and handcuffed, to the Elkhart County Jail in Goshen, Indiana. As the deputy pulled into the police garage, a female officer took custody of Ms. Jones. The female officer frisked Ms. Jones, including her chest, buttocks and crotch, and took her to the booking area. Ms. Jones was fingerprinted and photographed; the warrant was read to her.

Jail records report that Ms. Jones arrived at the county jail at 2:10 p.m. on September 25, 1985, and that the court was notified that she was in custody at 3:05 p.m. that day. Elkhart County Police Captain Nelson Stutsman testified that fifty-five minutes from booking to notification of the court is about average for non-intoxicated persons taken into custody on civil attachments when the courts are open.

Ms. Jones was taken to the women's ward on the jail's third floor, where a female deputy checked Ms. Jones' hair, mouth and ears. The female deputy instructed Ms. Jones to step into the shower, remove her clothes, and give her clothes to the deputy. After checking Ms. Jones' clothes, the deputy instructed the nude Ms. Jones to lift each of her breasts, turn around, and squat three times. Ms. Jones complied.

---

1. The plaintiff contends that this is a proper method of the naming the defendant in an "official capacity" suit. The defendants disagree, and argue that a preliminary injunction could not issue against an office. Because of the resolution of the preliminary injunction motion, resolution of this issue may await another day.

2. Ms. Jones had also failed to appear for a hearing on September 12, 1983. Judge Platt had issued a body attachment without bond in response to that failure to appear. The entry of November 4, 1983 reads, "Sheriff returns Attachment not served by order of court."

The county jail policy manual in effect on September 25, 1985 and at the time of the hearing[3] provides in pertinent part:

.04 STRIP SEARCH

A. An officer may have a person strip searched if he believes it is in the interest and safety and security of the officers and other inmates, or he believes the subject is concealing some item by finding only part of an item or the action of the person being searched. Strip Searches will not ordinarily be conducted unless the person is processed for long term holding.

B. Male officers will handle male inmates and female officers the female inmates at all times in a strip search situation. Extreme caution should be exercised before deciding to conduct a strip search. Such searches will be handled in a dignified manner.

C. The inmate will be taken to a contained area, preferably a rest room and asked to remove all clothing. The clothing is searched thoroughly. Keep in mind that cuffs, collars, and seams of clothing are good hiding places for contraband. The subject's shoes will be searched inside and out. Be on the watch for false heels and soles as well as the material used for shoestrings.

D. Have the subject face you and put arms straight out at shoulder level. Search hair with your fingers and have subject open mouth. Use wooden tongue depressor to check mouth cavity. Also search nostrils as drugs can be hidden there. Be careful not to stick fingers in the subject's mouth where they can be bitten. Check the armpit area. Have subject turn around and bend over and grab his ankles. Use flashlight to inspect the rectal area. Check the scrotum as some contraband can be concealed around the area under the penis. Check the bottom of the feet.

E. After you are certain the subject has not [sic] contraband return the clothing to the subject and have him get dressed.

F. NOTE: Be careful if you let the subject remove his own belt. There are small belt buckle knives that look like belt buckles. The wallet can contain a cleverly concealed firearm. There are gun wallets made and sold to the general public. Hair picks may be camouflaged as razor or dagger instruments which look completely innocent at a glance.

.05 EXCEPTIONS TO REQUIREMENT

Persons arrested for traffic offenses and booked into the jail will not be strip searched as a rule but will be frisk searched. Body cavity searches will be only on express permission of the Sheriff Jail Commander or Jail Warden, and only for just cause.

\* \* \* \* \* \*

.02 STRIP SEARCH

(See GO: 51703.04)

The strip search for the female inmate is the same procedure as for males with the exception of certain body areas. Check the vaginal area while subject is bent over for the rectal search. A search under the breasts is required. It is possible for a female to have pouches surgically placed under the breasts. The pouch cannot be seen by quick observation. Instruct the subject to lift the breast for inspection.

Captain Stutsman testified that county jail personnel perform strip searches of persons charged with a serious felony or when officers have information that the arrestee is dangerous or may have contraband. Persons brought in on civil attachments, he stated, are not normally subjected to a strip search. A strip search of Ms. Jones, Capt. Stutsman stated, would have been inconsistent with jail policy. Ms.

---

**3.** Capt. Stutsman testified that the policy manual is being re-written because of the county police department's recent move into new facilities; accordingly, he described the policies as being in effect "temporarily". However, in a letter dated April 2, 1986, Capt. Stutsman stated, "Also keep in mind the policy is being rewritten for the new facility." Plaintiff's Exhibit 4. Under these circumstances, the court finds sufficient permanence in the policy.

Jones contends that the Elkhart County Sheriff Department's policy is to routinely subject to strip searches all arrestees other than traffic offenders.

Ms. Jones saw no male officers during the strip search. She was humiliated; her arthritic knees and dislocated left hip made it difficult and uncomfortable to squat and stand. Although Ms. Jones concedes that the female deputy handled the search in a professional manner, she still has nightmares about the experience.

### C.

Ms. Jones was placed in the jail's general female population following the search. She was not taken to court until October 2, seven days after her arrival at the Elkhart County Jail and nine days after her apprehension on the body attachment. Capt. Stutsman testified that seven days is longer than the normal delay in being taken to court on a civil body attachment; delays of one to three days are not unusual. Judge Platt submitted an affidavit in which he stated that, "[w]hen persons are arrested on a writ of attachment, they are normally brought into the Court within 24 to 48 hours of their arrest, exclusive of weekends and holidays", unless the availability of attorneys and other necessary parties causes a greater delay. Affidavit of Judge Platt, ¶ 4. With respect to the delay in bringing Ms. Jones to court,

> her former husband, Mr. Rabius, was represented by Max K. Walker, Jr., a Deputy Prosecuting Attorney in Elkhart County. Since criminal charges had been filed against Mrs. Jones in another case, Mr. Walker had to withdraw from this

case on behalf of Mr. Rabius, and Mr. Rabius had to obtain other counsel.

Affidavit of Judge Platt, ¶ 4.

Judge Platt also explained that when he orders issuance of a writ of attachment for persons in contempt, he ordinarily fixes an amount of bail or escrow as required by Indiana law,[4] unless extenuating circumstances exist, such as Ms. Jones' "attempt to take and secrete the child from the custodial parent and remove herself and the minor child from the jurisdiction of the Court". Affidavit of Judge Platt, ¶ 3.

Two days after her court appearance before Judge Platt, Ms. Jones was released following her payment of an amount fixed by the court. Judge Platt then forwarded the case to Dearborn County, where all parties then resided.

No custody proceedings involving Ms. Jones now pend in Elkhart County.[5] Ms. Jones now resides in Lawrenceburg, Dearborn County, Indiana, where her son is in the custody of the Department of Public Welfare. She has no intention of returning to Elkhart County.

### II.

Ms. Jones seeks two forms of injunction: one directed at the Elkhart County Sheriff's Department's strip search policy, and the other directed at the length of time a civil arrestee may be held before being taken to court.

### A.

A party seeking a preliminary injunction bears the burden of showing: (1) that the movant has no adequate remedy at law; (2)

---

4. IND. CODE 34-4-9-2.1(b) provides:

(b) For the purpose of procuring personal jurisdiction over a person who has allegedly violated a court order or who is otherwise in contempt of court, the court may issue a writ of attachment of the body of the person. The writ shall:

(1) be directed to a sheriff or assisting sheriff; and

(2) fix an amount of:

(A) bail, if the order that the person has allegedly violated does not concern a child support obligation; or

(B) escrow, if the order that the person has allegedly violated concerns a child support obligation.

5. Upset at her treatment by Judge Platt, Ms. Jones commenced disciplinary proceedings against the judge, wrongly averring that Judge Platt was related to Mr. Rabius' attorney. She based this averment on hearsay. The court assumes this evidence was presented solely on the matter of Ms. Jones' credibility, but the court finds no issues affected by Ms. Jones' credibility. The parties do not dispute the principal facts relevant to the preliminary injunction motion.

that the movant will suffer irreparable harm absent the preliminary injunction; (3) that the harm the movant will suffer absent injunctive relief is greater than the harm the defendant will suffer as a result of injunctive relief; (4) a reasonable likelihood of success on the merits; and (5) that the injunction will not harm the public interest. *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903 (7th Cir.1986); *Manbourne, Inc. v. Conrad*, 796 F.2d 884 (7th Cir.1986); *Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir.1986); *American Hospital Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d 589 (7th Cir.1986); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984); *Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677 (7th Cir.1983).

■ The plaintiffs need not, depending upon the severity of the harm they will suffer if the injunction does not issue, demonstrate a high probability of success on the merits of their claim; it may suffice that the plaintiffs' chances are better than negligible. *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903 (7th Cir.1986); *Sealy Mattress Co. of Michigan, Inc. v. Sealy, Inc*, 789 F.2d 582 (7th Cir.1986); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984); *Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119 (7th Cir.1982). The "degree of likelihood of prevailing on the merits that the plaintiff must demonstrate decreases the more heavily the balance of harm weighs in its favor". *Brunswick Co. v. Jones*, 784 F.2d at 275; *American Hospital Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d at 593. Accord, *Dynamics Corp. of America v. CTS Corp.*, 794 F.2d 250, 252 (7th Cir.1986) ("the greater the probability the plaintiff will win the case in the end, the less irreparable harm he need show relative to the defendant in order to get the preliminary injunction"). If the plaintiffs make the necessary showings, the determination of whether injunctive relief should be granted rests within the court's discretion. *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir.1986).

**B.**

In support of her likelihood of success at trial on the merits of her claim concerning the strip search, Ms. Jones notes that every court that has considered the issue has concluded that a policy of indiscriminate strip searches of all pretrial detainees violates the Fourth Amendment. *Stewart v. Lubbock County*, 767 F.2d 153 (5th Cir.), *cert. denied*, ── U.S. ──, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983); *Salinas v. Breier*, 695 F.2d 1073 (7th Cir.1983); *Tikalsky v. City of Chicago*, 687 F.2d 175 (7th Cir.1982); *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied sub nom. Clements v. Logan*, 445 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Bono v. Saxbe*, 620 F.2d 609 (7th Cir.1980); *Hunt v. Polk County*, 551 F.Supp. 339 (S.D. Iowa 1983); *Tinetti v. Wittke*, 479 F.Supp. 486 (E.D.Wis.1979), *aff'd* 620 F.2d 160 (7th Cir.1980). See also *Hill v. Bogans*, 735 F.2d 391 (10th Cir. 1984); *Cruz v. Finney County*, 656 F.Supp. 1001 (D.Kan.1987). She further argues that the defendants can suffer no harm from an order requiring them to abandon an unconstitutional policy and that such an order, by definition, would serve the public interest.

Despite the strength of her argument on her claim for damages, the court concludes that Ms. Jones has no standing to seek injunctive relief against the strip search policy.

■ Article III of the United States Constitution limits the power of the United States courts to the resolution of "cases" and "controversies". *Diamond v. Charles*, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986). The "existence of a case or controversy is a jurisdictional prerequisite to a federal court's deliberations", *Hodel v. Irving*, ── U.S. ──, ──, 107 S.Ct. 2076, 2080, 95 L.Ed.2d 668 (1987), and depends upon the presence of a party with "a direct stake in the outcome", *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), rather than a concerned bystander who would use the judi-

cial power as "no more than a vehicle for the vindication of value interests". *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973). Accordingly, the Constitution restricts the exercise of judicial power, "which can so profoundly affect the lives, liberty, and property of those to whom it extends", *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982), to those who can "allege such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions". *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

In *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Supreme Court considered a claim by a class of plaintiffs alleging racially discriminatory conduct by two judicial officers who had sentenced members of the class more harshly than other persons convicted of crimes. The Court held that no basis for injunctive relief had been shown. Proof that members of the plaintiff class had suffered constitutional deprivations was insufficient: "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present, adverse effects." 414 U.S. at 495–96, 94 S.Ct. at 676. The likelihood of future harm to the plaintiff class turned upon whether individual class members would again face the local criminal justice system due to future violation of valid criminal statutes:

> Apparently, the proposition is that *if* respondents proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed. But it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture.

414 U.S. at 497, 94 S.Ct. at 676.

The Court applied the *O'Shea* rule of standing dispositively in *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), in which Adolph Lyons sought damages and injunctive relief as a result of a Los Angeles police officer's use of a "chokehold" when he stopped Mr. Lyons for a traffic violation:

> That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between the parties.
>
> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such a manner.

461 U.S. at 105–06, 103 S.Ct. at 1667. Accordingly, the Court reversed the Ninth Circuit's holding that Mr. Lyons had standing to seek injunctive relief. The Court deemed Mr. Lyons' fear of another arrest and chokehold insufficient to satisfy *O'Shea*'s requirement of "continuing, present, adverse effects" of the past inci-

dent. 461 U.S. at 107 n. 8, 103 S.Ct. at 1668 n. 8 ("The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant."). See also, *Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

Ms. Jones' assertion that she has standing to maintain this claim for preliminary injunctive relief cannot survive in the face of this authority. She has shown no threat that she will again be subjected to a strip search; the only claimed "continuing, present, adverse effects" of the earlier search is emotional injury, which the *Lyons* Court held insufficient to establish standing. Ms. Jones, who no longer lives in Elkhart County and has no plans to return there, certainly faces no greater spectre of future strip searches than does any Elkhart County resident.

The Ninth Circuit had distinguished *O'Shea* and *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), on the grounds that the police required nothing more than a traffic stop to engage in the conduct Lyons sought to prohibit. *Lyons v. City of Los Angeles*, 615 F.2d 1243, 1246 (9th Cir.1980) ("the chances of being stopped by a policeman for an alleged motor vehicle violation are fairly good. Certainly the odds of having that sort of encounter are much greater than the odds of having the sort of encounters described in *O'Shea* or *Rizzo* ..."). The Court disagreed, noting that Mr. Lyons had not been stopped by police in the five months that elapsed between Mr. Lyons' encounter with the chokehold and the filing of his complaint. The Court noted further that even accepting the Ninth Circuit's estimate of the probability of Mr. Lyons again being stopped, the case still would not warrant injunctive relief:

> But even assuming that Lyons would again be stopped for a traffic or other violation in the reasonably near future, it

is untenable to assert, and the complaint made no such allegation, that strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped.

461 U.S. at 108, 103 S.Ct. at 1668.

Arguably, Ms. Jones demonstrated an Elkhart County Sheriff policy that would allow strip searches of any non-traffic arrestee.[6] To the extent the *Lyons* Court's analysis creates an exception for circumstances in which the plaintiff faces a reasonable likelihood of repeated contact with police, however, Ms. Jones cannot claim benefit of that exception. Accepting that all citizens face a reasonable likelihood of someday being stopped for a traffic offense, the likelihood of arrest for a non-traffic offense must be deemed a lesser one.

For the foregoing reasons, the court concludes that Ms. Jones' petition for a preliminary injunction must be denied because she lacks standing to seek such relief.

**C.**

The same rule and reasoning governs Ms. Jones' claim for injunctive relief with respect to time spent in jail awaiting a court appearance on a civil body attachment. Ms. Jones has shown no likelihood that she will be again arrested and left in jail for a week (or for any lesser period) before being taken to the Elkhart Superior Court (or any other court). Accordingly, the court concludes that Ms. Jones lacks standing to seek preliminary injunctive relief on that claim, as well.

**III.**

For the foregoing reasons, the plaintiff's petition for a preliminary injunction should be, and hereby is, DENIED.

SO ORDERED.

---

**6.** The materials before the court may be read to provide that Elkhart Sheriff personnel may conduct strip searches of non-traffic arrestees

whenever they believe it would be beneficial. Cf. *Los Angeles v. Lyons*, 461 U.S. at 110 n. 9, 103 S.Ct. at 1669, n. 9.