**HEDD SURGI–CENTER, INC., an Illinois corporation, and Esther Pimental, M.D., individually and as Medical Director of the Hedd Surgi–Center, Inc., Plaintiffs,**

v.

**Bernard J. TURNOCK, M.D., Director of the Illinois Department of Public Health, Defendant.**

No. 88 C 10805.

United States District Court, N.D. Illinois, E.D.

April 13, 1989.

Michael M. Lorge, Brendi E. Kaplan, Chicago, Ill., for Hedd Surgi–Center, Inc.

Douglas Drenk, Wheaton, Ill., for Dr. Pimental.

Neil F. Hartigan, Atty. Gen. of Illinois by Kathleen Kreisel Flahaven, Asst. Atty. Gen., General Law Div., Chicago, Ill., for defendant.

Alan S. Gilbert, Lorie A. Chaiten, Sonnenschein Carlin Nath & Rosenthal, Colleen K. Connell, Roger Baldwin Foundation of ACLU, Chicago, Ill., as amicus curiae.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### I. INTRODUCTION

The plaintiffs—Hedd Surgi–Center, Inc. (Hedd) and Dr. Esther Pimental, Medical Director of Hedd—have brought this action against the defendant, Bernard M. Turnock, Director of the Illinois Department of Public Health, seeking a preliminary injunction enjoining the defendant from enforcing the Ambulatory Surgical Treatment Center Act of Illinois, Ill.Ann.Stat. ch. 111½, paras. 157–8.1 to –8.16 (Smith–Hurd 1977) (ASTCA), a comprehensive statutory and regulatory scheme that provides for the licensure of "any place ... devoted primarily to ... the performance of surgical procedures" and at one point also provided for the licensure of "any facility in which a medical or surgical procedure [was] utilized to terminate a pregnancy, irrespective of whether the facility [was] devoted primarily to this purpose." As this court will discuss in more detail, the Seventh Circuit held that this latter provision violated the fundamental right to privacy and abortion when applied to the licensing of facilities performing first trimester abortions. *See Ragsdale v. Turnock,* 841 F.2d 1358 (7th Cir.1988) (appeal filed Nov. 10, 1988). The plaintiffs, however, claim that the ASTCA was invalidated in its entirety and that the state cannot enforce the Act as to any portion of the clinic's practice (including nonabortion procedures). The defendant, on the other hand, contends that the opinion applied only in the abortion context and, therefore, that enforcement of the ASTCA to nonabortion surgical procedures is constitutional. For the following reasons, the court concludes that the Sev-

enth Circuit in *Ragsdale* invalidated the ASTCA only as applied to first and early second trimester abortion procedures. Accordingly, the court denies the plaintiffs' motion for a preliminary injunction.

## II. BACKGROUND

Given the rather complicated procedural posture of this case, the court will discuss the events culminating in the present motion for a preliminary injunction. On November 27, 1985, this court issued a preliminary injunction enjoining the State of Illinois from enforcing the ASTCA [1] as applied to a plaintiff class of physicians [2] who offer or perform first or early second trimester abortions. *See Ragsdale v. Turnock,* 625 F.Supp. 1212, 1231 (N.D.Ill.1985), *aff'd in part, vacated in part as moot,* 841 F.2d at 1376. Dr. Pimental asserts that as a physician performing first and early second trimester abortions, she is part of this plaintiff class.

On appeal, the Seventh Circuit vacated in part this court's preliminary injunction, holding that the plaintiffs' challenge to a second trimester hospitalization requirement was moot because state officials had conceded that the provision was unconstitutional and, therefore, were not enforcing it. *Ragsdale,* 841 F.2d at 1365–66. The remainder of this court's preliminary injunction, however, was affirmed. The Seventh Circuit held that the ASTCA and its regulatory scheme (both the licensure requirement and most of the substantive provisions) violated the right to abortion as established in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and its progeny, since the first trimester regulations were not justified by important state health objectives. 841 F.2d at 1368, 1370–75. Although the court conceded that "there may well [have been] facets of the statute and regulations which would individually pass constitutional muster," *id.* at

1375, the court nevertheless invalidated the scheme in its entirety because the unconstitutional licensing provision was an "integral part" of the scheme as a whole (and therefore, could not be severed from the Act) and because the scheme already had been riddled with numerous exceptions resulting from other judicial decisions and state nonenforcement policies. In such circumstances, the court "simply '[could not] untangle the constitutional from the unconstitutional provisions.'" *Id.* (*quoting Mahoning Women's Center v. Hunter,* 610 F.2d 456, 460 (6th Cir.1979), *vacated on other grounds,* 447 U.S. 918, 100 S.Ct. 3006, 65 L.Ed.2d 1110 (1980)). The defendants appealed to the Supreme Court, which thus far has not decided whether to hear the case.

In June 1988, the State of Illinois instituted on-site inspections of Hedd, determined that the clinic was not in compliance with several provisions of the ASTCA (as applied to nonabortion procedures), and began license revocation proceedings. On November 30, 1988, Dr. Pimental and the clinic filed with this court a petition for rule to show cause why the defendant should not be held in contempt of court for allegedly violating this court's preliminary injunction in *Ragsdale.* The plaintiffs, however, did not clearly delineate the scope of the clinic's activities, alleging only that the clinic was "a medical facility devoted primarily to the performance of *surgical procedures, including* first and early second trimester abortions and other abortion-related gynecological procedures." Petition for Rule to Show Cause at 2 (filed Nov. 30, 1988) (emphasis added). Also unclear was the precise nature of the plaintiffs' challenge, for at times the plaintiffs appeared to allege that the Seventh Circuit's opinion struck down the ASTCA in its entirety—even as applied to nonabortion procedures; [3] at other times, though, the

---

**1.** The opinion also addressed two other Illinois statutes not at issue in this case.

**2.** This court certified two plaintiff classes: one consisting of all duly licensed physicians who perform abortions and another consisting of all women in the State of Illinois of child-bearing age who desire or may desire an abortion some-

time in the future; the court also certified a defendant class of state officials. These certifications were not challenged on appeal.

**3.** *See also* Transcript of Nov. 30, 1988, Hearing at 7 (statement by Mr. Lorge) ("[W]e believe that in striking the act there is no basis for the

plaintiffs asserted that application of the Act would implicate the fundamental right to abortion. Furthermore, even though the plaintiffs ostensibly brought the petition pursuant to the *Ragsdale* decision, they chose not to proceed through class counsel for the *Ragsdale* plaintiffs and, indeed, did not even notify class counsel, who learned of the hearing only from the Attorney General's Office.

In its response to the petition, the defendant asserted that although the state could not directly regulate first trimester abortions under the ASTCA, it could count the number of abortions performed at a clinic in determining whether the facility was devoted "primarily to the performance ... of surgical procedures." According to the defendant, if the total number of surgical procedures (including abortions) constituted a majority of the clinic's practice, the state then could proceed under the ASTCA to regulate the nonabortion procedures performed at the clinic.

At the November 30 hearing, this court noted that the petition was ambiguous and that the precise question whether abortions could be counted in determining whether a clinic fell within the ambit of the ASTCA was not addressed specifically by this court's preliminary injunction (or, this court believed, by the Seventh Circuit's opinion). The court and class counsel also expressed concern over the effect a possible modification of the preliminary injunction would have on the Supreme Court's decision whether to hear the case. This court then determined that the petition was more in the nature of a temporary restraining order and, given the sparse factual record, concluded that the plaintiffs had not satisfied the requirements for such an order. *See* Transcript of Nov. 30, 1988, Hearing at 19–20. Although the court questioned whether the plaintiffs could proceed within the class context (especially without going through class counsel) and suggested that a separate lawsuit might be more appropriate, the court nevertheless set a briefing schedule for a preliminary

injunction and a hearing date of January 6, 1989. On December 12, 1988, however, the plaintiffs sent this court a letter requesting leave to withdraw their petition for rule to show cause, which this court granted on December 27.

On that very day, the plaintiffs filed as a separate suit (No. 88 C 10805) a verified complaint for declaratory and injunctive relief, which was assigned to Judge Bua. In the complaint the plaintiffs again asserted that the Seventh Circuit's decision invalidated the ASTCA even as applied to nonabortion surgical procedures; this time, however, the plaintiffs were more specific in their contention that abortions rights also were implicated, alleging that "over 90% of the entire procedures performed at the clinic [were] abortions." Verified Complaint at ¶ 9 (filed Dec. 27, 1988). Upon learning of this suit, the defendant filed with this court a motion requesting that the court find the case related to *Ragsdale*. At a January 12, 1989, status hearing, this court noted that no one objected to a finding of relatedness and, therefore, granted the defendant's motion. The court then required the parties to file a preliminary injunction pretrial order and set a status date for January 20, 1989.

At the January 20 hearing the parties informed the court that the plaintiffs were proceeding on two theories: First, that the Seventh Circuit's decision went beyond this court's preliminary injunction to strike down the ASTCA in its entirety, even as applied to nonabortion procedures; and second, that the plaintiffs were members of the *Ragsdale* class and any attempt to apply the ASTCA to the plaintiffs would "have a chilling effect on [the clinic's] right to perform first trimester and early second trimester abortions, as protected under the constitutional rights to privacy and the First and Fourteenth Amendments to the United States Constitution." Preliminary Injunction Pre–Trial Order at 2 (filed Jan. 20, 1989). The plaintiffs, however, agreed to file an amended motion for preliminary injunction and pursue only their first posi-

State's action, whether this particular surgi-center performs one abortion or ten abortions or

no abortions, the act has been stricken; there is no statutory authority for their actions.").

tion (preserving their rights to argue the alternative position) and then, if necessary, to appeal this court's decision on that narrow ground. In addition, the parties agreed to stay the state administrative proceeding until this court ruled on the revised motion for preliminary injunction.

### III. ANALYSIS

A plaintiff seeking a preliminary injunction bears the burden of establishing the following elements:

> (1) [T]hat it has no adequate remedy at law; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm it will suffer if the preliminary injunction is not granted is greater than the irreparable harm the defendant will suffer if the injunction is granted; (4) that it has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest.

*Brunswick Corp. v. Jones,* 784 F.2d 271, 273–74 (7th Cir.1986). By agreement of the parties, however, only the fourth factor—the reasonable likelihood of the plaintiffs' prevailing on the merits of their first theory—is at issue here.[4] This opinion, then, is confined to the purely legal issue whether the Seventh Circuit's opinion in *Ragsdale* invalidated the ASTCA even as applied to nonabortion procedures. *See* Transcript of Jan. 20, 1989, Hearing at 4 (statement of Mr. Lorge) ("We are looking for a very clear reading *on a legal issue that really would need no facts,* and that is, in reading the *Ragsdale* decision, did the court strike in its entirety the Ambulatory Act?") (emphasis added); *id.* at 9 (statement of Mr. Lorge) ("We would rather deal with the straight, clear, legal issue. That is really what we came into this Court about originally.... Our preference

would be to proceed on the pure legal issue of the reading of the Seventh Circuit decision."); *id.* at 16 (statement of Mr. Lorge) ("[T]he only material fact that at this point I would think would have to be stipulated to would be the fact that the State was proceeding under the Ambulatory Act, and I think that is clear from the administrative hearing filings."). This court concludes that it did not.

First, the Court of Appeals reviewed this court's preliminary injunction and factual record (which dealt only with the question of first trimester and early second trimester abortions) and, "with the exception of the portion of the injunction regarding the second trimester hospitalization requirement, which [was] VACATED AS MOOT," the court affirmed the injunction. 841 F.2d at 1376 (emphasis in original); *see also id.* at 1360 ("Because we believe certain of the claims are moot, we vacate in part. In most respects, however, we affirm the preliminary injunction."); *id.* at 1375 ("[W]e are constrained to affirm the district court's injunction of the scheme as a whole."). Thus, any amendment of this court's preliminary injunction was directed solely to the issue of the second trimester hospitalization requirement.

Second, the Court of Appeals expressly analyzed the constitutionality of the ASTCA and its regulations in the context of their application to first and early second trimester abortion procedures.[5] *See, e.g., id.* at 1366–67 ("On the merits, we must consider whether the requirements of the statutory and regulatory scheme *violate the right to privacy (and to abortion) as established in* Roe ... *and its progeny.*") (emphasis added; footnotes and citations omitted); *id.* at 1369–70 (referring to "abortion context"). After outlining the

---

4. Accordingly, the court will not address the remaining factors and need not make any findings of fact.

Furthermore, the court will not address the abstention issues presented in the defendant's motion to dismiss, since such a motion was not contemplated by the court's briefing schedule set on January 20 and, as the remainder of this opinion makes clear, discussion of its arguments is unnecessary.

5. The court actually employed the legal standard applicable to first trimester abortions, since the statutes and regulations did not distinguish between first and second trimester abortions and, in effect, applied only to first trimester abortions due to the unenforced second trimester hospitalization requirement. *See* 841 F.2d at 1368–69.

"medical necessity" test applicable to first trimester abortions, *see id.* at 1367–69, and concluding that this standard applied even though the regulations were directed to all facilities primarily devoted to surgery (and not simply to abortion clinics), *id.* at 1369–70, the court first held that the plaintiffs had met "their threshold burden of showing an impact on the abortion decision," *id.* at 1370.

The court next examined the requirement that facilities performing first trimester abortions be licensed at all and concluded that the requirement was unconstitutional. *Id.* at 1371. The court reasoned, therefore, that "[p]urely as a matter of the plain language of the statutory and regulatory scheme, once the licensing requirement falls, the remainder of the requirements fall with it (or, more properly, are inapplicable)." *Id.*

Nevertheless, as an alternative argument the court examined "those specific substantive aspects of the regulations focused on at trial," *id.* at 1371–72, and concluded that those provisions also unconstitutionally burdened a woman's exercise of her right to abortion, *id.* at 1372–75; *see, e.g., id.* at 1373 (physical plant equipment requirement has "no medical justification whatsoever" *when applied to first and early second trimester abortions* ) (emphasis added). In

fact, although concluding that some of these regulations individually could be constitutional, *id.* at 1368 n. 8, 1372 n. 11, the court declined to analyze specifically each provision and sever those that were unconstitutional. The court noted that "severability applies only to 'any provisions which can be given effect without the invalid provisions,' and that 'severance is improper if the unconstitutional provision is "an integral part of the statutory enactment viewed in its entirety." ' *Id.* at 1375 (*quoting Zbaraz v. Hartigan,* 763 F.2d 1532, 1545 (7th Cir.1985), *aff'd by an equally divided Court,* 484 U.S. 171, 108 S.Ct. 479, 98 L.Ed.2d 478 (1987)). In this case, however, the court was confronted with a comprehensive scheme whose applicability depended upon whether a licensing requirement could stand; when that licensing provision was declared unconstitutional, the court reasoned, "not only [could] none of the other provisions 'be given effect without the invalid provisions,' but the licensing provision [was] certainly 'an integral part' of the scheme as a whole." *Id.* In those circumstances, the court could not " 'untangle the constitutional from the unconstitutional provisions,' " *id.* (*quoting Mahoning,* 610 F.2d at 460), and, accordingly, invalidated the scheme as a whole.[6] Thus, con-

6. The plaintiffs make much of the court's invalidating the entire statutory scheme and choosing not to sever the unconstitutional provisions from the constitutional. By this decision, the plaintiffs reason, the "entire ASTC Act" was "absolutely nullifi[ed]." Memorandum in Support for Plaintiffs' Amended Motion for Preliminary Injunction at 9. True enough, but "nullified" as to what? The Court of Appeals discussed the relationship between the "integral" licensing requirement, which was found to be unconstitutional as applied to early abortion procedures, and the regulations that were conditions of such licensure and determined "not to dissect the statutory scheme for partial application to abortion providers." Memorandum of the Plaintiff Classes in the Related Case of *Ragsdale v. Turnock* in Response to Memorandum in Support of Plaintiffs' Amended Motion for Preliminary Injunction at 5. The court said nothing about the constitutionality of the scheme, in whole or in part, with respect to facilities that did not perform abortions. This conclusion is supported by the fact that when the court mentioned the possible constitutionality of other provisions, *see* 841 F.2d at 1375, it did so in the

context of their constitutionality as applied to abortions. *See id.* at 1368 n. 8 (postulating that some regulations involved "may well pass muster under the less stringent standard of review applied to state regulation of second trimester abortions"); *id.* at 1372 n. 11 (speculating that requirements governing, for example, pathology examination and reporting of abortions may be constitutional since they "seem as though they would place no real burden at all *on the abortion right* ") (emphasis added).

The plaintiffs also make much of the court's statement that "[t]he specific substantive requirements are not (leaving aside the unenforced requirement that all abortions must be performed in an ASTC) applicable to abortions, *per se,* but rather to ASTCs." *Id.* at 1371. The plaintiffs, however, read this statement out of context. The court earlier had invalidated the provision requiring separate licensure of facilities devoted to performing abortions and then reasoned that since the licensing requirement was invalid, the rest of the statutory requirements "f[e]ll with it *(or, more properly, [were] inapplicable),"* *id.* (emphasis added)—"inapplicable," that is, to abortion procedures, since the

trary to the plaintiffs' assertions, it is evident from the "four corners"[7] of the Seventh Circuit's opinion that the court invalidated the legislative scheme only as applied to the abortion context.

On a more fundamental level, however, the plaintiffs' argument ignores the appropriate legal framework within which to analyze constitutional challenges to state enactments regulating nonabortion procedures. When neither suspect classes are involved nor fundamental rights implicated, the standard of review of state legislation is whether it bears a rational relationship to a legitimate state interest. The plaintiffs do not argue that the Illinois statutes and regulations affect suspect classes or implicate fundamental rights when applied to nonabortion procedures; therefore, the statutes, as applied to other surgical procedures, could be invalidated only if they were "irrational"—an unlikely prospect, given the track record of rational-relationship challenges.[8] Furthermore, the Seventh Circuit itself acknowledged that it was reviewing these regulations under the "strict scrutiny" standard. *See, e.g., id.* at 1369 (applying strict scrutiny notwithstanding general applicability of regulations); *id.* at 1371 ("rational basis" standard of review inappropriate); *id.* at 1378 (Coffey, J., dissenting) (disagreeing with majority's decision to apply strict scrutiny even to regulations not specifically directed to abortion procedures). Thus, the Seventh Circuit struck down the Illinois legislation only as it applied to first and early second

trimester abortion procedures and did not address its constitutionality in any other context.

## IV. CONCLUSION

The court again emphasizes that this opinion does not address the particular factual situation of Hedd Surgi–Center, but instead analyzes only the narrow, purely legal issue whether the Seventh Circuit's opinion in *Ragsdale* invalidated the Illinois statutory and regulatory scheme as applied to nonabortion procedures. This court concludes that the Seventh Circuit's decision to strike down the Illinois legislation applied only to surgical facilities performing first and early second trimester abortions. The plaintiffs, therefore, have not sustained their burden of proving that there is a reasonable likelihood of their prevailing on the merits of their first theory. Accordingly, the court denies the plaintiffs' motion for a preliminary injunction without prejudice to their pursuing the second legal theory.

court never addressed the constitutionality of the licensure provision as applied to ASTCs not performing abortions. *See, e.g., id.* at 1371 ("The first facet of the scheme we consider is the requirement that facilities performing *first trimester abortions* be licensed at all.") (emphasis added). The court then merely reiterated what it had stated earlier: that while most of the remaining regulations did not specifically single out abortion, the same "medical necessity" standard applied. The court then proceeded, in the alternative, to address the constitutionality of the remaining provisions as applied to abortion services. Accordingly, the plaintiffs' selective, out-of-context references to the opinion do not support their argument.

**7.** *See* Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiffs' Amended Motion for Preliminary Injunction at 4.

**8.** This court acknowledges that there is dictum in its opinion stating that the defendants had failed to demonstrate even a rational basis for the statutory and regulatory scheme. *See* 625 F.Supp. at 1230, 1231; *see also* 841 F.2d at 1371. Nevertheless, this court held that the appropriate standard of review was whether the state could articulate a "compelling need" for the scheme.