**NORWALK CORE, a/k/a Norwalk Chapter of the Congress of Racial Equality and Roodner Court Fair Rent Association et al., Plaintiffs,**

v.

**NORWALK BOARD OF EDUCATION, a/k/a the Board of Education of the City of Norwalk, Connecticut, Defendant.**

Civ. No. 12624.

United States District Court
D. Connecticut.

Sept. 4, 1968.

See also D.C., 298 F.Supp. 208, 210, 213.

Jonathan W. Lubell, of Lubell & Lubell, New York City (Stephen L. Fine, Westport, Conn., on the brief), for plaintiffs.

Robert H. Rubin, Sp. Corp. Counsel of City of Norwalk, South Norwalk, Conn., for defendant.

## MEMORANDUM OF DECISION DENYING PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER

TIMBERS, Chief Judge.

Plaintiffs move for a temporary restraining order to prevent defendant from closing the Nathaniel Ely School, South Norwalk, Connecticut, pending determination of their motion for a preliminary injunction in this class action. Their motion is based on the pleadings, supporting affidavits, briefs and oral argument of counsel on September 3, 1968. After due consideration, the Court holds that plaintiffs' motion for a temporary restraining order should be denied. In addition, pursuant to Rule 65(a)(2), Fed.R.Civ.P., the Court orders that the trial of the action on the merits be advanced and consolidated with the hearing on the motion for a preliminary injunction.

Plaintiffs' motion for a temporary restraining order accordingly is denied.

### FACTS

Plaintiffs Norwalk Core (Core), Roodner Court Fair Rent Association (Association) and two minor children allege that defendant Norwalk Board of Education (Board), while committed to racial integration in the schools and cognizant of the important advantages of the neighborhood school concept, nevertheless has preserved neighborhood public elementary schools only in middle class and upper middle class white neighborhoods. It is alleged that the Board "has intentionally abandoned or destroyed and permitted to lie unused" public elementary schools in the low in-

come Black and Puerto Rican neighborhoods. This, it is claimed, constitutes a double standard denying the class which plaintiffs claim to represent the right to attend an integrated neighborhood school and compelling them to be transported into white neighborhoods. That the busing operates in one direction only is said to be a denial of equal protection of the law under the guise of racial integration.

Plaintiffs seek a declaratory judgment holding this discriminatory practice unconstitutional; a permanent injunction prohibiting the maintenance of white neighborhood schools without at the same time instituting a Black neighborhood school policy; and a permanent mandatory injunction to compel the Board to produce a Black neighborhood school policy for approval by the Court.

The Board denies all the allegations except those which attribute to it a policy of promoting racial integration; and the Board alleges special defenses, including standing, failure to state a claim, lack of jurisdiction, unconstitutionality of relief sought, administrative discretion, and failure to exhaust remedies available under Connecticut law.

### CLAIMS OF THE PARTIES WITH RESPECT TO THE TEMPORARY RESTRAINING ORDER SOUGHT

Plaintiffs, in requesting a temporary restraining order, seek to maintain the status quo as of the time of commencement of this action; such status quo is said to be threatened by the Board's announced plans to discontinue the pre-kindergarten and kindergarten classes at the Nathaniel Ely School prior to the start of the present school year.* This decision allegedly was made after commencement of the present action, and is said to be "directly harmful" to plaintiffs' case and an "affirmative move" by

---

* During oral argument counsel for the Board stated that only the kindergarten classes are being discontinued and that the pre-kindergarten program would continue to be operated at the School.

the Board to undermine the purposes of the suit. The four and five year old children who would attend Nathaniel Ely are now to be bused, exposed to hazards and disadvantages, and deprived of comfort and self-confidence. Their parents will be deprived of a local forum in which to air their views. The affidavits submitted in support of the instant motion reiterate these allegations.

The Board, in opposition to the instant motion, accuses plaintiffs of laches in not moving for the present relief until just before the beginning of the school year, alleging that plaintiffs have been aware of the Board's intention to discontinue the kindergarten program at Nathaniel Ely since May or June, 1968. During the time between plaintiffs' notice of the Board's intentions and the instant motion, the Board claims it has expended money to institute the busing program. In addition, it claims it could not staff the School adequately now were the Court to order its reopening. Notwithstanding this factual controversy, the Board urges that granting of the restraining order would be contrary to recent constitutional doctrine in that it would have the necessary effect of depriving the children of the opportunity to attend an integrated school by compelling them to attend a segregated kindergarten in a building devoid of other school activities.

## OPINION

■ A motion for a temporary restraining order is addressed to the discretion of the Court. It seeks to preserve the status quo pending hearing on the motion for a preliminary injunction and trial on the merits. Although its denial may work injury to the movant, this alone is insufficient to compel its issuance. The movant has no "right" to a temporary restraining order. Instead, the Court must balance the validity of the claims asserted against the nature of the acts to be enjoined, and evaluate the movant's probability of success in the underlying action. Thus, while irreparable injury is a prerequisite, it is not controlling. 7 Moore's Federal Practice ¶ 65.04–.05 (2d ed. 1966).

In the present controversy, plaintiffs are asserting rights against a public instrumentality. At this late date, the temporary restraining order they seek may disrupt the educational policy of the community of Norwalk. As noted in Yakus v. United States, 321 U.S. 414, 440–41 (1944):

"[W]here an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff. * * * This is but another application of the principle, declared in Virginian Ry. Co. v. System Federation, 300 U.S. 515, 552, that 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.' "

■ Returning to the more general area of a temporary restraining order, the law in this Circuit is clear that, like a preliminary injunction, it is an extraordinary remedy which will not be granted unless there is a clear showing of probable success and irreparable injury. See American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903, 904 (2 Cir. 1968); Clairol Incorporated v. Gillette Company, 389 F.2d 264, 265 (2 Cir. 1968); Santos v. Bonnano, 369 F.2d 369, 370 (2 Cir. 1966); Imperial Chemi-

cal Industries Limited v. National Distillers and Chemical Corp., 354 F.2d 459, 462 (2 Cir. 1965); Societe Comptoir De L'Industrie Cotonniere Establissements Boussac v. Alexanders Department Stores, Inc., 299 F.2d 33, 35 (2 Cir. 1962).

■ While, as noted above, irreparable injury, during the pendency of the action, is insufficient by itself to mandate the granting of a temporary restraining order, it is nevertheless "[t]he most significant condition which must be present * * *." Capital City Gas Company v. Phillips Petroleum Company, 373 F.2d 128, 131 (2 Cir. 1967). In the present controversy, however, the allegations of irreparable injury focus primarily on the harm which may result if permanent relief is denied. The only claim of injury during the pendency of the action concerns possible damage to the young children incident to being bused and the potential disruption of the academic year if the Nathaniel Ely School is temporarily closed and plaintiffs later are successful. Conversely, it is urged that the order would work no harm to the children who could continue to attend their neighborhood school, nor to the Board which could move the children later if the Board ultimately prevails on the merits.

These claims, however, clearly ignore the adverse consequences of a temporary restraining order on the children themselves: it would continue the de facto economic segregation existing at Nathaniel Ely by compelling Black and Puerto Rican children to attend an unintegrated school. On this motion plaintiffs do not seek to have the Court order the busing of white children into the Ely School during the pendency of the action. This is their ultimate goal; but until it is attained it is difficult to see the "irreparable harm" which will result from placing these young children in a racially integrated environment, albeit one somewhat removed from their home

neighborhood. This exposure of young children of all races to the acknowledged benefits of an integrated school is the goal of both sides in the present dispute; the critical difference concerns only the location of this exposure. To deny the exposure in order to preserve a segregated neighborhood school would seem itself to be inconsistent with the relief sought by plaintiffs.

■ While the issuance of a temporary restraining order "serves as an equitable policing measure to prevent the parties from harming one another during the litigation" and to retain the status quo, Hamilton Watch Co. v. Benrus Watch Co., Inc., 206 F.2d 738, 742 (2 Cir. 1963), where as here the alleged disruption of the status quo may be beneficial to both parties and not hinder the effectuation of whatever relief this Court grants in the underlying action, the motion should be denied. Just as a local neighborhood Black school is arguably preferable to no school, Griggs v. Cook, 272 F.Supp. 163 (N.D.Ga.), aff'd per curiam, 384 F.2d 705 (5 Cir. 1967), so is a non-neighborhood integrated school arguably preferable to a neighborhood segregated school. Admittedly, the most desirable goal is a combination of integration with white and Black neighborhood schools; but this alternative is unavailable on the present motion. The operation of a school is within the discretion of the local board. While a federal court may have jurisdiction when that board violates an individual's constitutional rights, the anticipated closing of the Nathaniel Ely School would impose no such violation.

■ This in no way implies a resolution of the ultimate issues in the underlying action; but it recognizes, for purposes of the instant motion alone, the position of the Supreme Court in Brown v. Board of Education, 349 U.S. 294, 299 (1955), that "[s]chool authorities have the primary responsibility for elucidating, assessing and solving these

problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of governing constitutional principles."

The good faith of the Board and the minimal nature of the harm which the present closing of the Ely School will impose, pending determination of plaintiffs' rights in subsequent proceedings in this action, do not justify the granting of a temporary restraining order.

■ In denying plaintiffs' present motion, the Court wishes to indicate its intended utilization of the procedure of Rule 65(a)(2), Fed.R.Civ.P., should plaintiffs renew their claim on a motion for a preliminary injunction. This will enable the Court to consolidate the trial of the action on the merits with the hearing on the motion for a preliminary injunction, to avoid the repetition of evidence at trial and to expedite final determination of this sensitive issue. As recently noted in Singleton v. Board of Education, 387 F.2d 349 (4 Cir. 1967), such procedure provides a means of avoiding the piecemeal vindication of civil rights which results from the issuance of preliminary injunctions in complex fact situations. That court, as does this Court, while recognizing that relief at a later date might be detrimental, recommended acceleration of the case on the trial calendar and use of Rule 65(a)(2) to hear the merits at the same time. 387 F.2d at 350–51.

### ORDER

Ordered that

(1) Plaintiffs' motion for a temporary restraining order is denied.

(2) In the event plaintiffs claim their motion for a preliminary injunction for hearing, the Clerk is directed to advance the trial of the action on the merits and to consolidate the trial with the hearing on the motion for a preliminary injunction.