Lorraine **AMENT** et al., Plaintiffs,

v.

Stanley T. **KUSPER**, Jr., et al.,
Defendants.

No. 74 C 133.

United States District Court,
N. D. Illinois.

Jan. 18, 1974.

Judson H. Miner; Davis, Miner, Barnhill & Bronner, Chicago, Ill., for plaintiffs.

Bernard Carey, States Atty. for Cook County, Sheldon Gardner, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the plaintiffs' motion for a temporary restraining order.

This is an action challenging the constitutionality of an Illinois state statute,

specifically chapter 46 § 7–10 of the Ill. Rev.Stat.[1] Section 7–10 prohibits registered voters or electors from signing the nominating petitions of a candidate of any political party if during the preceding two years, they have requested the primary ballot of another political party.

The plaintiffs in their complaint have alleged, *inter alia*, the following facts which are important to the proper disposition of the instant motion. The plaintiffs are all qualified voters or electors who have registered to vote in Niles Township, Illinois. Prior to the filing deadline for the March 1974 primary election, each plaintiff signed a nomination petition for a candidate for the office of Republican Township Committeeman of Niles Township. Plaintiffs Ament, Bivins, Freedman, Leibowitz, and Pinkerman signed the petition for William J. Elliott. Plaintiffs Feig, Field and Sylvan signed the nomination petition circulated on behalf of John Nimrod. Both candidates, John Nimrod and William J. Elliott have allegedly secured sufficient signatures on their respective petitions to qualify for a place on the March 1974 Republican primary ballot. Further both candidates filed their petition within the time limits prescribed by the Illinois Election Code.

After the petitions were filed, the validity of a number of signatures, including plaintiffs', were challenged on the ground that the signatories had requested democratic primary ballots at the March 1972 primary and therefore did not qualify as legal primary electors as defined in Section 7–10 of the Illinois Election Code. The defendant Board was then convened pursuant to Section 10–9(3) of the Illinois Election Code to consider the challenge. The defendant Board, on January 4, 1974, ruled that plaintiffs, as well as others who had signed either nominating petition, were not qualified electors within the meaning of Section 7–10 and invalidated their signatures. As a result of that decision, the nomination petitions of candidates Elliott and Nimrod were invalidated on the ground that they contained inadequate signatures and the names of El-

1. Section 7–10 of the Illinois Election Code (ch. 46 Ill.Rev.Stat.) provides in relevant part:

Petitions for nominations—Signers—Statement of candidacy—Revocation of signatures—Names required

The name of no candidate for nomination, or State central committeeman, or township committeeman, * * * or ward committeeman or candidate for delegate or alternate delegate to national nominating conventions, shall be printed upon the primary ballot unless a petition for nomination has been filed in his behalf as provided in this Article in substantially the following form:

*     *     *     *     *

Such petition shall be signed by qualified primary electors residing in the political division for which the nomination is sought in their own proper persons only and opposite the signature of each signer, his residence address shall be written or printed (and if a resident of a city having a population of over 10,000,  .   .   . the street number of such residence shall be given).  .   .   .

*     *     *     *     *

Such   petitions   * * *   shall   be signed:

*     *     *     *     *

(h)   .   .   .   if for a candidate for township committeeman, by not less than 5% nor more than 8% of the primary electors of his party in his township or part of a township as the case may be.

*     *     *     *     *

For the purpose of determining eligibility to sign a petition for nomination or eligibility to be a candidate under this Article, a "qualified primary elector" of a party (1) is an elector who has not requested a primary ballot of any other party at a primary election held within 2 years of the date on which the petition must be filed or (2) is a first-time voter in this State registered since the last primary of an even numbered year preceding the date on which the petition must be filed, but no such person may sign petitions for or be a candidate in the primary or more than one party. However, in the case of the first primary following the election at which a party first qualifies as a "political party", as defined in Section 7–2, a "qualified primary elector" of such party is an elector who has not requested a primary ballot of any other party at any primary election held within 2 years of the date on which the petition must be filed.

liott and Nimrod will not appear on the Republican party ballot at the March 19, 1974 primary election.

As a result of defendant's action, plaintiffs have allegedly been deprived of their constitutional right to participate effectively in the selection of the candidate for the office of Committeeman of the political party of their choice.

The plaintiffs in the instant motion request that this Court enter a temporary restraining order enjoining the defendants and their agents, employees, successors in office and all those acting in concert or participation with them (1) from implementing the provisions of chapter 46 § 7–10 of the Illinois Revised Statutes and thereby not disqualify plaintiffs as nominating petition signers for candidates for the office of Republican Township Committeeman of Niles Township on the grounds that they requested a primary ballot of the democratic party at the March 1972 primary election or within two years of the date on which the petition was to be filed, and (2) from printing ballots for the March 19, 1974 Republican primary election without the names of William J. Elliott and John Nimrod appearing on it.

In support of their motion, the plaintiffs have made the following additional contentions:

1. The ballots for the March 19, 1974 primary are to be printed on January 23, 1974.

2. Crucial to the preservation of plaintiffs' rights is that the status quo be maintained until the constitutionality of the practice of chapter 46 section 7–10 is determined. Otherwise, the ballots for the March 19, 1974 primary will be printed, the names of William J. Elliott and John Nimrod will not appear on the Republican ballots, and plaintiffs will be deprived of the right to effectively participate in the choosing of the candidate for the office of Com-

mitteeman of the political party of their choice.

3. Plaintiffs have no adequate remedy at law. Unless this Court immediately restrains defendants and their agents, employees, successors in office and all those acting in concert or participation with them from declaring invalid plaintiffs' signatures and thus the candidacies of Messrs. Elliott and Nimrod and from printing the March 19, 1974 primary ballots without the names of William J. Elliott and John Nimrod appearing on it, plaintiffs will suffer irreparable harm.

4. Based on the Supreme Court's holding in Kusper v. Pontikes, 51 U.S. 414, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), there is a substantial likelihood that plaintiffs will prevail on the merits.

After carefully evaluating the merits of the instant motion, it is the opinion of this Court that the plaintiffs' motion for a temporary restraining order should not be granted at this time.

Before a temporary restraining order can be granted, it is incumbent upon a court to favorably find that there exists a specific injury which does not have an adequate remedy at law and that there is a substantial likelihood that plaintiffs will prevail on the merits. See United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); United States v. Washington Post Co., 144 U.S.App.D.C. 321, 446 F.2d 1322 (1971); Norwalk CORE v. Norwalk Board of Education, 298 F. Supp. 203 (D.Conn., 1968). The instant motion for a temporary restraining order fails to satisfactorily meet these requirements.

I. *There Presently Exists an Adequate Remedy at Law.*

Contrary to the contentions of the plaintiffs, there presently are pending in Illinois State Court several ac-

tions involving virtually the same parties and actually the same legal and factual issues.[2] These state court actions have been initiated pursuant to chapter 46 § 10–10.1 of the Illinois Revised Statutes. Section 10–10.1 provides that a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. See Lizak v. Zadrozny, 4 Ill.App. 3d 1023, 283 N.E.2d 252 (1972); Wiseman v. Elward, 5 Ill.App.3d 249, 283 N. E.2d 282 (1972). Since there presently is pending judicial review in State Court of the instant controversy, a temporary restraining order issued by a federal District Court is not proper at this time.

Peculiar to our federal system is the principle that where a challenged state statute and state administrative action under such a statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question, federal courts should refrain from acting until after state courts have been given an opportunity to properly act. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1968); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). Likewise, where a state statute provides for judicial review of administrative practices under a state statute federal courts should allow state courts an opportunity to legally and equitably resolve the controversy even though the controversy might have putative constitutional dimensions. Federal court patience and reservation in such cases not only serves to minimize federal-state friction, but also avoids premature and perhaps unnecessary constitutional adjudication. Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). Such federal restraint is especially proper in cases such as the instant action which involve a fairly complex state statutory scheme designed to protect the integrity of the political party system. See Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); Bendinger v. Ogilvie, 335 F.Supp. 572 (N.D.Ill., 1971).

In one sense the fatal flaw in the plaintiffs' motion is not that it was made, but that it was made prematurely and improperly.

II. *It is Questionable Whether the Plaintiffs will Prevail on the Merits.*

■ It is the opinion of this Court that a citizen's right to freely vote in a primary election is significantly different from the citizen's putative right to participate as a signatory on a nominating petition in a political parties nomination of candidates regardless of that citizen's past party affiliation, declaration or acts. See Bendinger v. Ogilvie, supra; Briscoe v. Kusper, 435 F.2d 1046 (7th Cir., 1970).

The keystone of our democracy is the party system of politics. Before any general election, each party must go through its manpower resources in order to find a candidate who not only represents a concensus of the opinions of the members of his own party, but will be appealing to a majority of the entire voting population as well. It could be argued by the defendants that if the instant challenged statute did not exist, this system could be thrown into total chaos. For instance, suppose Party "A" had a strong candidate for a certain post and it was clear that he would receive his party's nomination with votes to spare. Without the deterrent effect of the instant challenged statute, it

---

2. The following cases are presently pending in the Circuit Court of Cook County, Illinois:

No. 74 C 039 John J. Nimrod v. Cook County Election Board

No. 74 C 044 William J. Elliott v. Cook County Election Board

No. 74 C 042 Lawrence Elmzen v. Cook County Election Board

No. 74 C 043 Lawrence Elmzen v. Cook County Election Board

would be a relatively simple matter for Party "A" to have its party regulars circulate and sign nominating petitions for certain weak candidates to run in Party "B's" primary in the hope that given a planned dilution of Party "B's" votes by cross-over voting, one of the weak candidates might very well win the Party "B" primary and then put up little or no opposition to the Party "A" candidate in the ensuing general election.

The possibility of confusion and subversion of the elective process is clear. The unconstitutionality of the statute in question and thus the prevailing of the plaintiffs on the merits is not obvious or certain. The instant controversy is clearly distinguishable from the case of Kusper v. Pontikes, *supra*.

III. *Given the Present Posture of this Case, the Instant Motion Seems Inappropriate Against the Present Defendants.*

█ The plaintiffs in the instant motion seek to enjoin the defendants, the members of the Cook County Electoral Board, (1) from implementing the provisions of chapter 46 § 7–10 of the Illinois Revised Statutes and thereby not disqualifying the plaintiffs as nominating petition signers, and (2) from printing ballots for the March 1974 Republican primary election without the names of the two candidates in question.

The efficacy of the requested restraining order against the instant defendants seems quite questionable. Section 7–13 of the Illinois Election Code (Chapter 46 of the Illinois Revised Statutes) provides that after hearing upon the validity of objection to the nominating petition for township committeeman "the Board shall not less than 74 days prior to the date of the primary certify its decision to the County Clerk stating whether or not the names of the candidate shall be printed on the ballot and

the County Clerk in his certificate to the board of election commissioners shall leave off of said Certificate the name of the candidate decreed by the said board not to be printed on the ballot and the County Clerk shall also refrain from printing on the official primary ballot, the name of any candidate whose name shall be decreed not to be printed on the ballot by the electoral board".[3]

It appears from a reading of this statute that the members of the Electoral Board, the instant defendants, cannot at this late date either certify the two candidates in question or prevent the ballot from being printed without the two candidates' names on it. Thus the actual effect of the requested restraining order against these defendants would seem doubtful.

Accordingly, it is hereby ordered that the plaintiffs' motion for a temporary restraining order is denied.

█

---

3. It is interesting to note in regard to the prior discussion of presently available state court remedies that the statute states in closing:

"However, the decision of the board is subject to judicial review as provided in Section 10–10.1."