Clyde JOHNSON;  Betty Harper;  Vernadine Harrington;  Florida Beckom;  Johnnie M. Brown;  Charnette Brown;  Alfanetta Brown;  Sheree L. Brown;  Ethel Mae Gatlin;  Patricia Robinson;  Barbara D. Myles;  Aritha Parks;  and Joseph Juarez, Plaintiffs,

v.

**COOK COUNTY OFFICERS ELECTORAL BOARD, et al., Defendants.**

No. 88 C 868.

United States District Court, N.D. Illinois, E.D.

Feb. 19, 1988.

Thomas E. Johnson, Steven Saltzman, Chicago, Ill., for plaintiffs.

Lawrence T. Krulewich, Madeleine S. Murphy, Richard M. Daley, Office of the State's Atty., Chicago, Ill., Burton S. Odelson, Odelson & Sterk, Ltd., Evergreen Park, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Once again,[1] this court has been asked to interfere with a local election to be held pursuant to the laws of the State of Illinois. Ill.Rev.Stat.1985 ch. 46 ¶ 7–1 *et seq.* Once again, the request comes at the last minute, thereby depriving this court the opportunity to give the matter the careful and considered analysis which such a matter deserves. Once again, this court will refuse to take such a drastic step.

### FACTS

Plaintiffs are thirteen individuals who claim to have signed nominating petitions to place David S. Canter on the ballot as a candidate in the March 15, 1988 Democratic Primary election for the position of Judge of the Circuit Court of Cook County. The Cook County Officers Electoral Board ("the Board") refused to count their signatures in determining whether Canter had collected the 500 signatures required for him to be placed on the ballot. It did so because, after an extensive administrative proceeding instituted by an objector to Canter's petitions, it decided that all three of the petition sheets filed by Mr. Othello Hamilton, a circulator for Canter, were invalid. *Objections of Marks Sporado to the Nomination Papers of David S. Canter For the Office of Judge of the Circuit Court, Democratic Party, To Be Voted Upon at the March 15, 1988 General Primary Election* ("the Decision"), 87 COEB J 2 (County Officers Electoral Board, January 22, 1988). The Board's refusal to count plaintiffs' signatures leaves Canter with only 491 valid signatures, 9 short of the minimum. Accordingly, the Board has ordered that Can-

---

1. *See Kasper v. Board of Election Commissioners of Chicago,* 651 F.Supp. 1311 (N.D.Ill.1987), *aff'd,* 814 F.2d 332 (7th Cir.1987).

ter not be placed on the March 15 primary ballot.

Plaintiffs claim that the Board's refusal to count their signatures violates their rights of association under the First and Fourteenth amendments and their rights to Due Process and Equal Protection Under the Fourteenth Amendment. The basis for these claims lies in the fact that the Board did not specifically find that their signatures were fraudulent or otherwise invalid. Indeed, the Board did not make any ruling as to the validity of the signatures on petition sheet # 2, the sheet plaintiffs signed. Instead, the Board ruled that the clear evidence of fraud on sheets # 1 and # 3 rendered Hamilton's oath on each of the sheets "incredible"; without a credible oath, the Board concluded, the signatures were invalid. *Decision* at ¶ 19(m). *See* Ill.Rev.Stat.1985, ch. 46 ¶ 10–4 ("No signature shall be valid or be counted in considering the validity or sufficiency of the petition unless the requirements of this section are complied with".).

Canter appealed the Board's decision to the Circuit Court of Cook County. Plaintiffs did not, because they could not. *See* Ill.Rev.Stat. ch. 46, ¶ 10–10.1 (only a candidate or an objector aggrieved by a decision of the electoral board may secure judicial review of such decision). Canter lost the first round of his appeal when the Circuit Court of Cook county ruled that two Illinois Appellate Court decisions, *Huskey v. Municipal Officers Electoral Board,* 156 Ill.App.3d 201, 108 Ill.Dec. 859, 509 N.E.2d 555 (1987) and *Fortas v. Dixon,* 122 Ill. App.3d 697, 78 Ill.Dec. 496, 462 N.E.2d 615 (1984), bound it to accept the Board's rationale for invalidating plaintiffs' signatures. *Canter v. Cook County Officers Electoral Board,* 88 Co. 30 (Circuit Court of Cook County, February 8, 1988).[2] Plaintiffs have sought a preliminary injunction from this court prohibiting the removal of Canter from the ballot by the Board.

Plaintiffs filed this case on February 2, 1988, ten days after the Board issued its Decision, and, because of administrative exigencies, the issue first came before the court on February 8. Late on that day, the Board informed this court that February 12 is the last date changes on the ballot may be made before it goes to printing. Thus, despite the critical nature of the rights and interests at stake, this court had four days to hold hearings on, analyze and resolve the preliminary injunction motion. For the reasons set forth below, the motion is denied.

## DISCUSSION

The Board first argues that this court should not hear this case because plaintiffs do not have standing to bring it and, even if they do, this court must abstain pursuant to the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971).

■ The standing argument borders on the frivolous. A plethora of cases have resolved that a state's regulation of procedures for nominating candidates to appear on an election ballot implicates the First Amendment, *see Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), due process, *see Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir.1970); and equal protection, *Illinois Election Board v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Gjersten v. Board of Election Commissioners,* 791 F.2d 472 (7th Cir.1986), rights of individuals who sign nominating petitions. Plaintiffs here claim that the Illinois election rules, and the actions of the Electoral Board in enforcing them, violated these rights. Accordingly, plaintiffs have standing to bring this action.[3] *See, e.g., Citizens for John W. Moore v. Board of Election Com'rs,* 794 F.2d 1254 (7th Cir.1986).

---

2. Neither side saw fit to provide this court with a transcript or written report of the state court's decision. Nevertheless, this court will accept, for the purposes of this ruling, the oral representations of counsel as to the substance of the state court's order.

3. Indeed, although the Board argues otherwise, the court in *Ament v. Kusper,* 370 F.Supp. 65 (N.D.Ill.1974), ruled that plaintiffs did have standing to sue. *Id.* 68 ("the fatal flaw in plaintiffs motion is not that it was made, but that it was made prematurely and improperly").

■ The Board's abstention argument is somewhat worthier. In *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court set forth the three part test for determining when a federal court should invoke the *Younger* doctrine:

1) Is there an ongoing state judicial proceeding;

2) Do the proceedings implicate important state interests;

3) Is there an adequate opportunity in the state proceedings to raise constitutional issues.

The Board contends, and plaintiffs conceded at oral argument, that these three requirements are met here. Furthermore, although *Younger* abstention generally applies only when the ongoing state court proceedings with which the federal case might interfere involves the federal litigant, the Supreme Court has indicated that there are "some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them...." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928–29, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975); *Hicks v. Miranda* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed. 2d 223 (1975).

Nevertheless, this court concludes that the instant case does not fall within this narrow class. Although Canter may well have the incentive to raise whatever arguments he can before the Illinois courts, the Board has not sufficiently demonstrated to this court that Canter can rely on plaintiffs' distinct and very real constitutional rights in his appeal of the Board's Decision. *See Bickham v. Lashof,* 620 F.2d 1238, 1243–45 (7th Cir.1980). *Cf. Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983) (state election regulation "discriminates against those candidates and—*of particular importance*—against those voters whose political preferences lie outside the existing political parties) (emphasis added). Moreover, the interests of Canter and those of the plaintiffs here "are not sufficiently intertwined," *Bickham v. Lashof,* 620 F.2d at 1244; whereas Canter seeks only to get on this ballot, plaintiffs seek to vindicate rights which apply to elections generally. Accordingly, this court will not abstain from entertaining plaintiffs' action.

*The Preliminary Injunction*

■ In *Curtis v. Thompson,* 840 F.2d 1291 (7th Cir.1988), the Seventh Circuit reiterated the test it laid out in *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir.1984), for determining when a district court should grant preliminary relief.

[Plaintiff], in establishing her entitlement to a preliminary injunction, bears the burden of demonstrating:

(1) that she has no adequte remedy at law;

(2) that she will suffer irreparable harm if the preliminary injunction is not issued;

(3) that the irreparable harm she will suffer if the preliminary injunction is not granted is greater than the irreparable harm the defendant will suffer if the injunction is granted;

(4) that she has a reasonable likelihood of success on merits; and

(5) that the injunction will not harm the public interest.

*Curtis v. Thompson,* at 1296, *quoting, Brunswick Corporation v. Jones,* 784 F.2d 271, 273–74 (7th Cir.1986).

The factors other than the fourth weigh in favor of granting the preliminary injunction here. Plaintiffs have no adequate remedy at law because they cannot appeal to the state court and, if the injunction does not issue now, their candidate will not be on the ballot. *See Citizens Party v. Illinois State Board of Elections,* 546 F.Supp. 1050 (N.D.Ill.1982). Similarly, they will be irreparably injured, irrespective of any later attempts to nominate Canter or another candidate for a state judicial position, since "even the temporary deprivation of First Amendment rights constitutes irreparable harm in an injunction suit." *Smith v. Board of Election Commissioners for City of Chicago,* 587 F.Supp. 1136 (N.D.Ill. 1984), *citing, Citizens for a Better Envi-*

*ronment v. City of Park Ridge,* 567 F.2d 689, 691 (7th Cir.1975).

The irreparable harm to the Board, on the other hand, would not be severe. While the ultimate resolution of this lawsuit could severely impair Illinois' election regulation scheme, the harm at issue here is that engendered by a *temporary* injunction. At most, then, the Board would suffer the imposition of having to place on a ballot the name of a candidate who, the Board itself has determined, obtained at least 491 valid signatures for nomination. If this constitutes injury at all, it is negligible when compared with the constitutional rights against which it must be weighed.

Finally, there would be no harm to the public interest of issuing the injunction and thereby compelling the Board to place Canter's name on the ballot. The people of Illinois, and more particularly the citizens of Cook County, have an interest "in an orderly procedure by which qualified persons seeking public office may enter elections." *Huskey v. Municipal Officers Electoral Board,* 156 Ill.App.3d 201, 108 Ill.Dec. 859, 509 N.E.2d 555 (1987). That interest has been served by the proceedings of the Board, the state court appeals and the instant challenge to the constitutionality of the Illinois law and the Board's proceedings. The public does not have an interest in seeing qualified persons kept off the primary ballot. Thus, if this Court determines that plaintiffs' constitutional rights may have been infringed, the public interest, if anything, supports granting the preliminary relief which plaintiffs' now seek.

In light of the determination that the four above-mentioned factors weigh in favor of a preliminary injunction under appropriate circumstances, this court need not find that the likelihood of plaintiffs' ultimately succeeding in this litigation is greater than fifty-fifty to grant their motion. *See Curtis v. Thompson,* at 1296 ("This circuit employs a 'sliding scale' approach in determining whether to grant or deny preliminary relief."). Nevertheless, an injunction will remain inappropriate if plaintiffs cannot demonstrate "at least a 'negligible' chance of success...." *Id.* Because, as explained below, this court concludes that plaintiffs have no chance of succeeding in this case, the motion for preliminary relief must be denied.

Plaintiffs claim that the removal of Canter from the ballot violated three separate constitutional provisions: the First Amendment rights of association and effective political persuasion; the Fourteenth Amendment right to due process; and the Fourteenth Amendment right to equal protection. As noted earlier, all of these rights are implicated by state election laws and regulations. Nevertheless, these rights are qualified by the state's strong interest in regulating elections. The Supreme Court has explained how these competing interests must be addressed:

> Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmus-paper" test that will separate valid from invalid restrictions. Instead, a court must resolve such a challenge by an analytic process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that plaintiff seeks to vindicate. It must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must determine not only the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all of these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

In this case, the plaintiffs' thrust is really twofold. They claim that the Illinois statute, by permitting the Board to invalidate all petition sheets of a circulator upon proof of a pattern of fraud and false-swearing with respect to only some of them, is

unconstitutional on its face. They also claim that, even if that rule may be proper in some cases, the Board's application of it in this case was not.

Plaintiffs' equal protection argument is misguided. The rule neither on its face nor as applied represents the sort of "purposeful or invidious discrimination" against which the equal protection clause protects. *See Illinois Election Board v. Socialist Workers Party,* 440 U.S. 173, 189, 99 S.Ct. 983, 993, 59 L.Ed.2d 230 (1979) (Stevens, J., concurring in part). As the Seventh Circuit succinctly explained in a case similar in many ways to the instant one:

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. Plaintiffs here have failed to establish any classification other than the consequences of the Board's improper application of their [sic] powers. They have shown no racial or ethnic discrimination. Nor have they claimed classification based on geographic location or poverty. Plaintiffs have also failed to prove that the Board's actions reflected political discrimination based upon political beliefs or party affiliations.

*Briscoe v. Kusper,* 435 F.2d at 1052. For the same reasons, plaintiffs' equal protection arguments here must fail.

Plaintiffs' First Amendment arguments are closer to the mark, but unsuccessful nonetheless. A state election regulation will pass constitutional muster if it is nondiscriminatory and reasonably related to the state's important interest in "protect[ing] the integrity and reliability of the electoral process itself. The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson*

*v. Celebrezze,* 460 U.S. at 788 n. 9, 103 S.Ct. at 1570 n. 9.

The Illinois courts have made it abundantly clear that "the general purpose of the Election Code's signature requirements is to provide an orderly procedure by which qualified persons seeking public office may enter elections," *Huskey v. Municipal Officers Electoral Board,* 156 Ill.App.3d at 205, 108 Ill.Dec. 859, 509 N.E.2d 555 and that "the circulator's affidavit is one of the primary safeguards against fraudulent nominating petitions." *Id.; Fortas v. Dixon,* 122 Ill.App.3d 697, 78 Ill.Dec. 496, 462 N.E.2d 615 (1984) (affirming decision of trial court which had reversed order of electoral board and invalidated all of the signatures on a particular petition sheet of circulator where the sheet clearly evidenced a pattern of fraud and false swearing). The State's determination that once a circulator has been shown to have filed two invalid petition sheets, the rest of his sheets can be invalidated *in toto* appears perfectly reasonable in light of these interests and policies.[4]

Plaintiffs insist, however, that the First Amendment requires a less restrictive approach—to wit, allowing the invalidation of the circulator's oath to raise a presumption that the signatures on the petition sheets are invalid, subject to proof that any particular signature is, in fact, a valid one. While this court agrees that such an approach would be less restrictive of First Amendment rights, this court does not agree that the First Amendment mandates it. *See Citizens for John W. Moore v. Board of Election,* 794 F.2d 1254 (7th Cir. 1986) (state need not adopt least restrictive alternative for election laws to satisfy First Amendment strictures).

The large increase in administrative costs that such a system would impose on the Board cannot be gainsaid. Instead of merely reviewing the conduct of the circulator to ensure the validity of his petitions,

---

**4.** Although plaintiffs would have this court *review* the state court's approval of the Board's decision in this case, that approach misconstrues the role of the federal courts. At least for the First Amendment analysis, this court must view the state court's approval of the Board's approach as an explication of the Illinois statute, and then examine the statute as so interpreted only to ensure that it meets First Amendment strictures.

the Board would be forced to open its hearings to challenges from endless numbers of individuals claiming that they actually signed petition sheets that were subsequently invalidated. While in this case nine such challenges would have sufficed to put Canter on the ballot, were such a system imposed on Illinois electoral laws, cases would no doubt arise in which hundreds if not thousands of such challenges would be involved. This court cannot say that the State's refusal to adopt such a system is constitutionally unreasonable.

Nor does this court find that the Board's refusal to undertake such a particularized examination of individual signatures in this case violated plaintiffs' First Amendment rights. Although the Illinois courts have not yet decided whether the statute *requires* the Board to invalidate all of the petition sheets of a circulator once it finds fraud and false-swearing on some of his sheets, *Fortas v. Dixon*, 122 Ill.App.3d at 701, 78 Ill.Dec. 496, 462 N.E.2d 615, the Board's decision to do so in this case was not unreasonable in the First Amendment sense.

There is no evidence on the record to indicate that the Board acted with malice toward Canter, the plaintiffs, or the views they supported. On the contrary, the record demonstrates that the Board undertook a thorough examination of Hamilton's sheets and found that they were replete with evidence of fraud and false-swearing. On this basis it concluded that Hamilton's notarized oath on all of his sheets was invalid. Whether this conclusion was correct, this court cannot say; that it was constitutionally permissible, this court has no doubt.

██ Plaintiffs' due process argument is related to, but distinct from, their First Amendment claim. Relying primarily on the Seventh Circuit's decision in *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir.1970), plaintiffs claim that the Board violated plaintiffs' rights to due process of law by invalidating all of Hamilton's sheets because the

Board's established procedures and past practices did not provide plaintiffs with forewarning that it might do so.

In *Briscoe*, the Court held that the City Board of Commissioners of the City of Chicago violated the due process rights of candidates and registered voters who signed their nominating petitions when it decided, for the first time, to enforce the statutory anti-duplication[5] rule and to require that, for a signature to be counted, it include the signer's middle initial. The Court reasoned that, because the Board's conduct infringed upon the constitutionally protected "freedoms of speech and association and the right to petition for redress of grievances," its conduct had to comport with the requirements of due process. *Id.* at 1053–54. Thus, it held that, "[r]egardless of whether the more restrictive position of the board [with respect to the anti-duplication and middle-initial rules] was constitutionally valid, the application of the new ... rule[s] without prior notice was unfair and violated due process." *Id.* at 1055.

> An agency may be bound by its own established custom and practice as well as by its formal regulations. The Board may not deviate from such prior rules of decision on the applicability of a fundamental directive without announcing its change of policy in advance. This is especially true where, as here, fundamental, constitutionally protected liberties are affected, and those interested require certain knowledge of what is expected of them by the state.

*Id.*

Plaintiffs here maintain that the instant case is on all fours with *Briscoe* —that the Board's "new" policy of invalidating all of a circulator's petition sheets where his oath on some of them is found to be invalid represents an impermissible deviation from its past practice. In so arguing, plaintiffs misconstrue the Court's holding in *Briscoe*. The Court in that case most emphatically did not hold that the mere violation of an established rule by a state administrative agency—even in the context of a constitu-

---

**5.** Anti-duplication rules prohibit voters from signing more than one nominating petition for a

particular office to be filled.

**1236**

tionally protected liberty—*ipso facto* constitutes a constitutional violation. Instead, the Court held that the Constitution prohibits agency deviations so great that individuals can not anticipate them. *Id. See also Kasper v. Board of Election Commissioners of Chicago*, 814 F.2d 332 (7th Cir.1987) ("The district court has no supervisory powers and no authority to instruct the Board how to follow state law.... [Even] a deliberate violation of state election laws by state election officials does not transgress against the constitution.").

Plaintiffs here simply cannot argue successfully that they could not have anticipated that the Board would invalidate all of Hamilton's petition sheets if it found a pattern of fraud and false-swearing in some of them. As noted above, recent Illinois appellate decisions had left it an open question as to whether the Illinois election laws actually *require* the Board to do so. Moreover, logic and common sense suggest the possibility that a Board charged with avoiding election fraud might adopt such an approach. If the Board violated its rules or state law in its decision, plaintiffs can look to state courts or the state legislature for relief; they cannot, however, obtain it from this court.

## CONCLUSION

Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction is denied.