Clinton A. KRISLOV and Joan A. Sullivan, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Wanda L. REDNOUR, Chairman of the State Board of Elections; Hannelore Huisman, Vice Chairman of the State Board of Elections; Ronald D. Michaelson, Executive Director of the State Board of Elections; and Kenneth R. Boyle, Judith A. Jones, Mitchell P. Kobelinski, David E. Murray, Langdon D. Neal, and Theresa M. Petrone, Members of the State Board of Elections, Defendants.

No. 96 C 674.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 12, 1996.

---

Stephanie Jean Simmons, Krislov & Associates, Ltd., Chicago, IL, for Clinton A. Krislov.

*MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

The plaintiffs, Clinton A. Krislov and Joan A. Sullivan, have sued the defendants, officials of the Illinois State Board of Elections ("State Board of Elections"), claiming that certain ballot-access provisions of the Illinois Election Code ("Election Code") and procedures employed by the State Board of Elections violated their First and Fourteenth Amendment rights. The plaintiffs seek class certification and pray for injunctive and declaratory relief. The defendants move to dismiss pursuant to Rule 12(b)(6) and oppose class certification. For the following reasons, the defendants' motion is granted in part and denied in part. The plaintiffs' motion for class certification is granted.

Mr. Krislov and Ms. Sullivan were candidates for federal office in the March 19, 1996 Democratic primary election. Mr. Krislov ran for the party's nomination as a U.S. Senator from Illinois, while Ms. Sullivan sought nomination as a Representative in the U.S. House of Representatives for the Seventh Congressional District. The State Board of Elections supervises the administration of the election laws throughout Illinois.

Pursuant to the Election Code, to get on the primary ballot, a candidate must gather a requisite number of valid nominating signatures. The plaintiffs' nominating petitions contained more than the requisite number of signatures. Objectors, however, challenged the validity of these signatures on various grounds set forth in the Election Code. The procedures for verifying the challenged signatures, established by the State Board of Elections, consumed the candidates' time, as well as financial and manpower resources. Mr. Krislov withdrew from the campaign; Ms. Sullivan continued, but lost the nomination. The plaintiffs challenge the constitutionality of the hurdles the defendants placed in their way to the ballot.

*I. Standing*

Federal judicial power is limited under Article III. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). Encompassed within the concept of "cases and controversies" is the requirement that the plaintiff have standing. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

■ Mr. Krislov and Ms. Sullivan have standing to challenge the constitutionality of the Illinois ballot-access provisions. To have standing "(1) the party must personally have suffered an actual or threatened injury caused by the defendant's allegedly illegal conduct, (2) the injury must be fairly traceable to the defendant's challenged conduct, and (3) the injury must be one that is likely to be redressed through a favorable decision." *Sanner v. Board of Trade of Chicago,* 62 F.3d 918, 922 (7th Cir.1995) (internal quotation marks omitted).

■ The defendants argue that neither Mr. Krislov nor Ms. Sullivan can allege an injury. Mr. Krislov withdrew from the primary elections prior to the defendants' ruling on the objections against him and prior to the election itself. The defendants therefore maintain that Mr. Krislov neither alleges nor can allege that the defendants injured him by depriving him of a place on the ballot, a place in the race for the U.S. Senate, or a seat in the U.S. Senate. With respect to Ms. Sullivan, despite the objections, her name was on the ballot, although she lost her primary bid. The defendants contend that her loss is not traceable to the defendants' conduct.

The standing of candidates to challenge unconstitutional ballot-access provisions is well-settled. *E.g., Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Moreover, being subjected to an unconstitutional process, regardless of the outcome, can constitute an injury under the First and the Fourteenth Amendments. *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* 37 F.3d 1216, 1220–22 (7th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 172, 133 L.Ed.2d 113 (1995); *see also Fulani v. Krivanek,* 973 F.2d 1539 (11th Cir.1992) (ballot-access provisions which unduly burden candidates' resources found unconstitutional, not-

withstanding candidate's appearance on ballot).[1]

■ The plaintiffs do not, however, have standing to bring a claim under the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg *et seq.* The plaintiffs argue that standing under the NVRA is irrelevant because they do not assert a claim under the NVRA. The plaintiffs nevertheless allege that the defendants invalidated ballot signatures on grounds contrary to the NVRA. (Am.Compl. ¶¶ 37–41; Prayer for Relief, ¶ 4.) Standing under the NVRA is limited to the United States Attorney General and the "aggrieved persons" whose voting rights have been denied or impaired. *Roberts v. Wamser,* 883 F.2d 617, 621 (8th Cir.1989); *Illinois Legislative Redistricting Comm'n v. LaPaille,* 782 F.Supp. 1267, 1271 (N.D.Ill.1991). The plaintiffs were candidates and thus do not have standing under the NVRA. The NVRA-related portions of the complaint will therefore be dismissed.

## II. 12(b)(6)

In deciding a motion to dismiss, a court will assume the truth of all alleged facts, construe them liberally, view them in the light most favorable to the plaintiff, and make all reasonable inferences in the plaintiff's favor. *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991). A court will grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir.1993) (internal quotation marks omitted).

A candidate's right to appear on the ballot is protected by the First and the Fourteenth Amendments. *American Party of Texas v. White,* 415 U.S. 767, 788–89, 94 S.Ct. 1296, 1309–10, 39 L.Ed.2d 744 (1974). The primary rationale for this protection is the fact that the rights of candidates and those of voters are intimately intertwined. Voters can only exercise their constitutional rights to vote and to associate for a political pur-

pose through candidates. *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979).

■ To determine the constitutionality of a ballot-access provision, the Court must first determine "the character and magnitude of the asserted injury to the [voters' and the candidates'] rights protected by the First and Fourteenth Amendments." *Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992) (quoting *Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570). The Court must next weigh that injury "against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the'" rights in question. *Id.* (quoting *Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570); *see also Citizens for John W. Moore Party v. Board of Election Comm'rs of Chicago,* 794 F.2d 1254, 1257 (7th Cir.1986) (citing *Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570).

■ The "[g]overnment must play an active role in structuring elections" if they are to be fair, honest, and orderly; thus, "[e]lection laws will invariably impose some burden upon individual voters" and candidates. *Burdick,* 504 U.S. at 433, 112 S.Ct. at 2063. "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions[,] . . . the State's important regulatory interests are generally sufficient to justify' the restriction." *Id.* at 434, 112 S.Ct. at 2063 (quoting *Anderson,* 460 U.S. at 788, 103 S.Ct. at 1569–70). When the ballot-access provisions impose "severe restrictions," they "must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed,* 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)). The state's justification must be "logically sound and consonant with common experience." *Citizens for John W. Moore Party,* 794 F.2d at 1257. The court will not require "empirical support in order to preserve the

---

**1.** Notwithstanding that the 1996 primary election has passed, the controversy is not moot. *Storer v. Brown,* 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 1282 n. 8, 39 L.Ed.2d 714 (1974); *Moore v.* *Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494–95, 23 L.Ed.2d 1 (1969); *Citizens for John W. Moore Party v. Board of Election Comm'rs of Chicago,* 794 F.2d 1254, 1256 (7th Cir.1986).

fundamentally political character of these choices." *Id.* at 1258.

Mr. Krislov and Ms. Sullivan challenge the constitutionality of the following ballot-access provisions:[2] (1) the Election Code provision allowing any voter to object to the validity of a nominating petition signature without revealing his or her interest, making a threshold showing of the challenge's validity, or incurring a penalty for unsubstantiated challenges, 10 ILCS 5/10–8 (1993); (Am.Compl. ¶¶ 18–23); (2) the three-step signature verification process, adopted by the State Board of Elections, requiring the checking of a computer database, the "polling sheets," and the signature binders, (Am.Compl. ¶¶ 24–36); and (3) the Election Code provision requiring that a petition circulator be a registered voter in Illinois. 10 ILCS 5/7–10 (Supp.1996); (Am.Compl. ¶¶ 42–46.)

Applying *Burdick,* as to the "character" of the injury alleged by the plaintiffs, the challenged provisions are not discriminatory. The plaintiffs have not alleged

> any classification other than ... [the "outsider-to-the-political-process" status].... They have shown no racial or ethnic discrimination.... Nor have they claimed classification based upon geographical location or poverty.... Plaintiffs have also failed to [allege] ... that the [defendants'] ... actions reflected political discrimination based upon political belief or party affiliation.

*Briscoe v. Kusper,* 435 F.2d 1046, 1052 (7th Cir.1970) (citations omitted); *Johnson v. Cook County Officers Electoral Bd.,* 680 F.Supp. 1229, 1234 (N.D.Ill.1988).

■ I will dismiss the "objector" portion of the complaint. The relevant section of the Election Code provides that "[a]ny legal voter ... having objections ... shall file an objector's petition" with the State Board of Elections. 10 ILCS 5/10–8. The plaintiffs argue that the provision is unconstitutional because it allows challenges without any threshold showing of their validity and without any penalty for unsubstantiated challenges. (Am.Compl. ¶ 19.) The effect is "to force Plaintiffs to devote enormous amounts of time, money and energy to defend against ... [tactically-motivated] challenges" filed by the candidates' opponents. (Am.Compl. ¶ 18.).

The plaintiffs insist that the unconstitutional burden which the "objector" provision places upon them can be eliminated if the objector is required to reveal his or her interest, (Pls.' Resp. to Defs.' Mot. to Dismiss at 17), if only a neutral body is allowed to challenge petition signatures, and if a penalty or a sanction is imposed for bringing unsuccessful challenges. (Am.Compl. ¶ 23.) This proposal is untenable because even if it will alleviate the candidates' burden, it will increase the voters', thereby raising a host of constitutional problems.

The "objector" provision keeps the Illinois political process open by inviting the participation of any voter, including political "outsiders." . It does require that the objector "state [his] ... interest." 10 ILCS 5/10–8. Of course, the challenger is more likely than not to be a supporter of the candidate's opponent. It is unrealistic to think that disinterested concern about the integrity of the electoral process would sufficiently motivate people to police candidates' signature gathering efforts. The provision further guards against entirely frivolous challenges by requiring that an objector state his or her name, residence address, the nature of the objection, and the relief sought. *Id.* A neutral body, the State Board of Elections, holds a judicially reviewable hearing to determine whether any of the objections are well-founded. (Defs.' Mot. to Dismiss at 6.) The plaintiffs' suggestions would either entirely exclude voters from participation in this process, if only a neutral body can bring challenges, or attach prohibitive costs to such participation, if a threshold showing of validity has to be made and if penalties for unsubstantiated challenges are imposed. In short, the plaintiffs' cure is worse than the disease.

I will not, however, dismiss the remainder of the complaint because to engage in the

---

**2.** Since I have dismissed the NVRA-related portion of the complaint, *see supra* I, it will not be discussed.

balancing exercise prescribed by the Supreme Court and this Circuit, a fuller record is required. The plaintiffs allege "severe" ballot-access restrictions. (Am.Compl. ¶ 1.) With respect to the process for signature verification, the plaintiffs allege that they were "forced to supply a staff of up to a dozen people to review the records ... on a daily, full-time basis for nearly two months," who were "repeatedly [and for weeks] denied access" to important documentation. (Am. Compl. ¶¶ 25, 34; Pls.' Resp. to Defs.' Mot. to Dismiss at 14.) The plaintiffs also allege that the requirement that the petition circulator be a registered voter is "particularly burdensome in Illinois, as compared with most other states." (Am.Compl. ¶ 46.) At this juncture, I cannot assess the "magnitude" of the burden or determine whether the justifications proffered by the defendants would suffice.[3]

### III. Class Certification

■ Mr. Krislov and Ms. Sullivan seek class certification for "all candidates whose nomination to a primary election ballot has been or will be challenged under Section 10–8 of the Illinois Election Code and the procedures administered by the Illinois State Board of Elections." (Am.Compl. ¶ 9.) The party seeking class certification bears the burden of establishing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

The plaintiffs' request for class certification will be granted because they satisfy the requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy of representation, *see Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993), and of Rule 23(b)(2). Indeed, defendants contest only the typicality requirement.

First, "the class is so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). If a class includes future members, they are necessarily unknown and unidentifiable, and their joinder is clearly

impracticable. *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 399 (N.D.Ill.1987). Mr. Krislov and Ms. Sullivan satisfy the numerosity requirement because the class includes future candidates, (Am.Compl. ¶ 10), and "a minimum of fifty candidates whose petitions have been challenged." (Pls.' Mot. for Class Certif. at 4.)

Second, "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The plaintiffs allege that various provisions of the Election Code and procedures adopted by the State Board of Elections violate the First and the Fourteenth Amendments. (Am.Compl. ¶ 11.) These allegations pose common questions of law and fact.

Third, "the claims ... of the representative parties are typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). "[A] 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993) (quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). Here, the typicality requirement is satisfied because the plaintiffs allege that the same statutory provisions and administrative practices are directed at and affect the named plaintiffs and all past and future candidates for primary elections.

Fourth, "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Adequacy of representation requires one, "the adequacy of the named plaintiff's counsel," *Retired Chicago Police Ass'n,* 7 F.3d at 598 (internal quotation marks omitted), and two, the absence of "antagonistic or conflicting interests" between the class members and the named plaintiffs. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986). The plaintiffs meet both prongs. Plaintiffs'

---

**3.** Both parties cite to cases in this Circuit which were decided upon much better developed records. *Johnson v. Cook County Officers Electoral Bd.,* 680 F.Supp. 1229 (N.D.Ill.1988); *Citizens for John W. Moore Party v. Board of Election Comm'rs of Chicago,* 665 F.Supp. 1334 (N.D.Ill.

1987), *aff'd,* 845 F.2d 144 (7th Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 968 (1989); *Citizens for John W. Moore Party v. Board of Election Comm'rs of Chicago,* 599 F.Supp. 662 (N.D.Ill.1984), *aff'd in part, vacated in part,* 794 F.2d 1254 (7th Cir.1986).

counsel, Krislov & Associates, represent that they are highly experienced in litigation of this nature. Although Mr. Krislov is a member of the class as well as a principal in the plaintiffs' counsel, no actual or potential conflict exists because the plaintiffs seek to vindicate their own allegedly infringed constitutional rights and are not suing for money damages.

Finally, the complaint challenges ballot-access provisions to which the plaintiffs were and to which future candidates for primary elections will be subjected. Therefore, the plaintiffs have alleged that the defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *See* Fed.R.Civ.P. 23(b)(2).

The defendants contend that class certification should be denied because it is "unnecessary[, since] . . . any injunctive [and declaratory] relief obtained by the named plaintiffs would . . . impact all others similarly situated." (Defs.' Resp. to Pls.' Mot. for Class Certif. at 3.) This argument must be rejected. The law in this Circuit is that "if the requirements of Rule 23 are satisfied[,] class certification should not be refused because of lack of need." *Brown v. Scott,* 602 F.2d 791, 795 (7th Cir.1979), *aff'd sub nom. Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980).

### Conclusion

For the reasons stated above, the defendants' motion to dismiss is granted in part and denied in part. The plaintiffs' motion for class certification is granted.