Larry ROCKEFELLER; Mary Parrish; Lugenia Gordon; Helen Dalley; Betsy Webster; Betsy M. Blattmachr; Nancy Burner; and Cornelius P. Dugan, Plaintiffs–Appellees,

Steve Forbes, Plaintiff–Intervenor–Appellee,

v.

William D. POWERS, Chairman, New York Republican State Committee; New York Republican State Committee, Defendants–Appellants,

New York State Board of Elections; Owen T. Smith; Carol Berman; Evelyn J. Aquila, and Helena Moses Donohue, Commissioners, New York State Board of Elections; New York City Board of Elections; Douglas Kellner; Vincent Cuttita; Paul Mejias; Vincent J. Velella; Weyman A. Carey; Ronald J. D'Angelo; Seymour Sheldon; Kathleen Wagner; Gertrude Strohm, and Ferdinand Marchi, Commissioners, New York City Board of Elections; Erie County Board of Elections; Roger Blackwell and Ralph Mohr, Commissioners, Erie County Board of Elections; Nassau County Board of Elections; Stephen Sabbeth, Commissioner, Nassau County Board of Elections; Suffolk County Board of Elections; Gerald Edelstein and Gerald Berger, Commissioners, Suffolk County

Board of Elections; Monroe County Board of Elections; M. Betsy Relin and Ronald J. Starkweather, Commissioners, Monroe County Board of Elections; National Republican Committee, Defendants.

No. 1694, Docket 96–7173.

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1996.

Decided Feb. 29, 1996.

Thomas W. Kirby, Wiley, Rein & Fielding, Washington, D.C. (Jan Witold Baran, Kevin J. Martin, of counsel), for Defendants–Appellants.

Thomas J. Spargo, East Berne, New York, for Plaintiff–Intervenor–Appellee.

Richard D. Emery, New York City (Andrew G. Celli, Jr., John R. Cuti, of counsel), Burt Neuborne, The Democracy Project, Brenan Center for Justice, New York University School of Law, New York City, for Plaintiffs–Appellees.

Before: VAN GRAAFEILAND, MESKILL and WINTER, Circuit Judges.

WINTER, Circuit Judge.

The instant appeal involves Judge Korman's order that the defendants place on the Republican presidential primary ballot in the 9th, 15th, 18th, and 24th New York congressional districts, the names of delegates committed to vote at the Republican National Convention for intervenor Forbes. Judge Korman based this order on his conclusion that New York ballot access requirements place a substantial burden on certain candidates, that many of these requirements serve no legitimate state interest, and that, but for these onerous and unjustified requirements, the Forbes delegates would be on the ballot in the districts in question. *See e.g. Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). Exclusion of the Forbes delegates therefore violated the First Amendment as incorporated by the Fourteenth. Our prior opinion in this matter was expressly limited to the question of whether New York ballot access laws violated the Equal Protection Clause. We now address the First Amendment issues. We agree with the district court and affirm.

Familiarity with an earlier opinion by the district court, *Rockefeller v. Powers,* 909 F.Supp. 863 (E.D.N.Y.1995), with an opinion by this court vacating an injunction issued by the district court, *Rockefeller v. Powers,* 74 F.3d 1367 (2d Cir.1995), and with the memorandum and order on appeal at this time, *Rockefeller v. Powers,* 917 F.Supp. 155 (E.D.N.Y.1996), is assumed. Because the New York presidential primary is scheduled for March 7, 1996, our decision will be rendered with considerably less elaboration than is found in a typical opinion.

With regard to the question of the substantiality of the burden placed on candidates seeking access to the primary ballot, the district court found that candidates without the support of the state Republican leadership were substantially burdened by the combination of: (i) the requirement that a slate of delegates collect signatures in each district amounting to 5% or 1250 registered Republicans, whichever is less; (ii) the requirement that the collection of signatures must occur in a period of 37 days, during which there are several important holidays, inclement weather, school and family vacations, and short periods of daylight; (iii) a rule limiting a voter from signing petitions for more than one candidate, thus reducing the total pool available to those collecting signatures; (iv) a host of rules defining what is a valid signature, including rules as to the qualification of witnesses to signings and inclusion of the election or Assembly district numbers of signers; and (v) other highly technical requirements that concern the presentation of petitions containing the signatures to election officials. We agree that this combination of New York requirements severely hampers candidates in contacting a sufficient number of registered Republicans and in collecting, legally documenting, and validly presenting their signatures. Indeed, as the district court found, at least 140% of the requisite 5%/1250 signatures usually must be collected to survive hypertechnical challenges and to succeed in getting a delegate slate on the ballot. (The Powers affidavit suggests that signatures of 140% of the required number is too little.)

With regard to justification for the substantial burdens on candidates, the district court noted that New York ballot access rules are far more burdensome than those adopted by virtually every other state. In-

deed, the 5%/1250 requirement is itself onerous in comparison with other states even without the very technical rules concerning the validation and presentation of the signatures that require as a practical matter the collection of at least 140% of the requisite number of signatures. The court further found that the rules as to the qualification of witnesses to signing, listing of election or Assembly district numbers of signers, and other technical requirements serve no legitimate governmental purposes. Moreover, it concluded that the state's acknowledged interest in seeing that candidates on the ballot have substantial public support does not justify the 5%/1250 rule. Indeed, New York provides an option to political parties providing for the collection of the least of 0.5% or 1000 signatures in each district as a fully permissible alternative scheme. The district court noted that this alternative scheme by its very existence demonstrates that the 5%/1250 requirement is unnecessary to satisfy the New York's interest in seeing that no candidate be on the ballot without substantial public support. We agree with the district court.

With regard to causation, the district court found that legitimate efforts were made by the Forbes slates of delegates to get on the ballot in the districts in question but that the burdensome and highly technical requirements described above stymied these efforts. Nevertheless, the Forbes slates did collect in excess of 0.5% of valid (even by New York's whimsical standards) signatures of Republican voters in each of the districts in question and thus would have qualified under the alternative scheme. The district court therefore ordered inclusion of the Forbes slate on the ballot in each of the districts. The district court's finding of causation in fact is not clearly erroneous, and its use of the 0.5% requirement in fashioning a remedy satisfies any interest of the state in limiting the ballot to candidates with substantial support in each district.

We therefore affirm. The mandate shall issue forthwith.