Clinton A. **KRISLOV** and Joan A. Sullivan, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Wanda L. **REDNOUR,** Chairman of the State Board of Elections; Hannelore Huisman, Vice Chairman of the State Board of Elections; Ronald D. Michaelson, Executive Director of the State Board of Elections; and Kenneth R. Boyle, Judith A. Jones, Mitchell P. Kobelinski, David E. Murray, Langdon D. Neal, and Theresa M. Petrone, Members of the State Board of Elections, Defendants.

No. 96 C 674.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 6, 1997.

---

**2.** This court notes that it would also have granted defendants' summary judgment motion applying a *de novo* standard.

Clinton A. Krislov, Krislov & Associates, Ltd., Chicago, IL, Stephanie Jean Simmons, Goldsmith, Thelin, Dickson & Brown, Aurora, IL, William Bogot, Chicago, IL, for Clinton A. Krislov.

Clinton A. Krislov, Krislov & Associates, Ltd., Chicago, IL, William Bogot, Chicago, IL, for Joan A. Sullivan.

Andrew Neal Levine, O'Rourke & Griffin, Chicago, IL, for Wanda L. Rednour, Hannelore Hulsman, Ronald D. Michaelson, Kenneth R. Boyle, Judith A. Jones, Mitchell P. Kobelinski, David E. Murray, Langdon D. Neal, Theresa M. Petrone.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The named plaintiffs, Clinton A. Krislov and Joan A. Sullivan, brought suit on behalf of themselves and all similarly situated individuals against the defendants, officials of the Illinois State Board of Elections ("State Board of Elections"), claiming that certain ballot-access provisions of the Illinois Election Code ("Election Code") and procedures employed by the State Board of Elections violated their First and Fourteenth Amendment rights. Both sides move for summary judgment on the issue of whether the Election Code provision requiring a petition circulator to be a registered voter in the candidates' "political division" is constitutional. For the following reasons, the defendants' motion is granted and the plaintiffs' motion is denied.

### Background[1]

Mr. Krislov and Ms. Sullivan were candidates for federal office in the March 19, 1996 Democratic primary election. Mr. Krislov ran for the party's nomination as a U.S. Senator from Illinois, while Ms. Sullivan sought nomination as a Representative in the U.S. House of Representatives for the Seventh Congressional District. The State Board of Elections supervises the administration of the election laws throughout Illinois.

Pursuant to the Election Code, to be placed on the primary ballot, a candidate must gather a requisite number of valid nominating signatures. The plaintiffs' nominating petitions contained more than the requisite number of signatures. Objectors, however, challenged the validity of these signatures on various grounds set forth in the Election Code. One of the grounds upon which the plaintiffs' nominating petitions were challenged was that the circulators that collected signatures on the petitions were not registered voters in the political division the plaintiffs were seeking nomination. This is an Election Code requirement. 10 ILCS 5/7–10. The procedures for verifying the

---

1. In a previous opinion in this case I found the plaintiffs have standing to bring their claims, dismissed part of the claim, and certified a class of candidates whose nomination to a primary election has been or will be challenged under Section 10–8 of the Election Code. *Krislov v. Rednour,* 946 F.Supp. 563 (N.D.Ill.1996).

challenged signatures, established by the State Board of Elections, consumed the candidates' time, as well as financial and manpower resources. Mr. Krislov withdrew from the campaign; Ms. Sullivan continued, but lost the nomination.

### Constitutionality of the Registered Voter Requirement

The plaintiffs claim that the requirement in Section 7–10 of the Illinois Election Code that the circulator of a candidate's nominating petition be a registered voter in the political division for which the candidate is seeking a nomination violates the First and Fourteenth Amendments. The plaintiffs contend that Section 7–10 severely restricts the pool of available circulators without any legitimate state interest.[2] Section 7–10 does restrict the pool of individuals who may be petition circulators. Section 7–10 requires that:

> [a]t the bottom of each sheet of [a nominating] petition shall be added a statement signed by a *registered voter of the political division,* who has been a registered voter at all times he or she circulated the petition, for which the candidate is seeking the nomination, stating the street address or rural route number of the voter, as the case may be, as well as the voter's city, village, or town....

10 ILCS 5/7–10 (emphasis added).

Accordingly, circulators must be registered voters in the "political division" the candidate is seeking a nomination. A "political division" is the district for which office is sought. (Zimmer Aff. ¶ 4). Thus, Mr. Krislov, because he sought a nomination to the United States Senate, could utilize any voter registered in Illinois to circulate petitions. Ms. Sullivan, since she sought a nomination to the U.S. House of Representatives for the Seventh Congressional District, could only use circulators registered to vote in the Seventh Congressional District. The defendants argue there are compelling state interests for Section 7–10's registered voter requirement.

A court deciding whether an election law violates the First and Fourteenth Amendment must:

> weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interest put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'

*Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983)). If the state law severely restricts a plaintiff's rights, then the regulation must be narrowly drawn and serve a compelling interest. *Id.* When the state law, however, "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson,* 460 U.S. at 788, 103 S.Ct. at 1570).

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.' " *Burdick,* 504 U.S. at 433, 112 S.Ct. at 2063 (quoting *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974)). The Seventh Circuit has interpreted Supreme Court precedent to require the State to present a "logical justification" for a challenged regulation. *Citizens for John W. Moore Party v. Board of Election Commissioners,* 794 F.2d 1254, 1257 (7th Cir.1986). The State is not required to provide empirical support for its regulations. The Supreme Court has "allowed states to justify regulation of elections with logical rather than empirical support in order to preserve the fundamentally political character of these choices." *Id.* at 1258. It is not

---

**2.** The plaintiffs argue Section 7–10 excludes the use of high school students and friends, relatives, and other registered voters from different political divisions.

the province of this court to substitute its opinion for that of other political branches. "It is enough if the law the state adopts serves permissible purposes." *Citizens for John W. Moore Party*, 794 F.2d at 1259.

The plaintiffs argue that Section 7–10 severely burdens their First and Fourteenth Amendment rights by strictly limiting the pool of available petition circulators. If a petition is circulated by an individual who is not a registered voter in the candidates' political division, then all of the signatures on the faulty petitions are declared void. Mr. Krislov, in particular, states that Section 7–10 "placed a severe burden on [his] ability to get an appropriate number of petition circulators from the available pool of honest and reliable persons who could have circulated such petitions." (Krislov Aff. ¶ 4).

The first consideration in the election regulation balancing test is the determination of the "character and magnitude" of the injury to the plaintiffs First and Fourteenth Amendment rights. The plaintiffs do not allege, nor do I find, Section 7–10 to be discriminatory. It applies to all candidates, regardless of party affiliation. I also do not find Section 7–10 an unreasonable regulation. In *Citizens for John W. Moore Party*, the Seventh Circuit considered an Illinois Election Statute which prohibited a circulator from gathering signatures for more than one political party per primary or general election. 794 F.2d at 1255–56. The plaintiff, arguing a First and Fourteenth Amendment violation, complained that he could not aide his own campaign because he had previously gathered signatures for another political party for the upcoming election. The court found that the regulation did "not increase the number of signatures anyone need[ed] to get on the ballot or the number of circulator-hours necessary to appear once, twice, or

more." *Id.* at 1260. The statute required the plaintiffs "to tap a *larger* number of circulators ... but it [did] not demand a greater total effort from circulators." *Id.* (emphasis in original). Further, the statute never barred a candidate from being placed on the ballot and did not affect the ability of those who could not be circulators to help the campaign in other ways. *Id.* The Seventh Circuit found the burden on the plaintiffs "slight." *Id.*

Likewise, I find that Section 7–10's burden on the plaintiffs in this case is slight. Section 7–10 places all candidates in the same position; they must utilize circulators from the political division in which they are seeking a nomination. Like the statute in *Citizens for John W. Moore Party*, Section 7–10 does not demand a greater effort from circulators or increase the number of circulator-hours required to place the candidate on the ballot. Additionally, it does not significantly restrict the available pool of circulators. In Mr. Krislov's case, he could have used any registered voter in the State of Illinois to gather signatures.[3] While Ms. Sullivan was limited to those registered voters in the Seventh Congressional District, the plaintiffs have presented no evidence that this was a particular burden on her candidacy. Ms. Sullivan was placed on the ballot, but ultimately lost.

While a candidate's relatives and friends who are not registered to vote in the candidate's political division, as well as high school students, are not permitted to be circulators, they may still aide the campaign in other ways. This includes recruiting appropriate circulators. Given the totality of the evidence in the case, I find that the burden on the plaintiff's First and Fourteenth Amendment rights caused by Section 7–10 is slight.[4]

---

3. As it turned out, Mr. Krislov actually submitted 10,080 signatures in an attempt to be placed on the ballot. This is more than the maximum number of signatures permitted when attempting to place a candidate on the ballot and a significantly greater number of signatures than the minimum 5,000 required. (Pl.Ex.B ¶ 4).

4. Mr. Krislov alleges that after his signatures were challenged he was required to devote a significant number of campaign personnel to the task of verifying each challenged signature.

(Pl.12(M) Statement, ¶¶ 8–10). Thus, Mr. Krislov argues, the burden of requiring registered circulators is severe. It does not necessarily follow, however, that because the consequences of having signatures challenged is severe, that the regulation itself is severe. Also, Mr. Krislov's signatures were challenged on over 15 different grounds. Accordingly, he would have been in substantially the same position of having to verify signatures even if Section 7–10's requirement

The burden to the plaintiffs' constitutional rights must be weighed against the State's interest in Section 7–10. The State must present a "logical justification" for the regulation. *Citizens for John W. Moore Party,* 794 F.2d at 1257. The State argues that Section 7–10 serves a compelling interest by "preventing the ballot from being laden with frivolous candidates of persons enjoying no significant support." (Zimmer Aff. ¶ 5). The State notes four ways in which Section 7–10 serves the interest of preventing frivolous, unsupported candidates:

> (1) a circulator registered within the nominating district is more likely to be familiar with the district and produce signatures of registered voters from that district; (2) requiring the candidate to use registered voters from the nominating district insures a basis of support for the candidate within the relevant community; (3) requiring registered voters insures those individuals circulating petitions are politically active and qualified to help the candidacy; and (4) allowing individuals not registered to vote in Illinois to circulate petitions would allow a candidacy to be controlled entirely from outside the state.
>
> (Zimmer Aff. ¶ 6).

The Supreme Court has found that states have a vital and compelling interest in requiring "political parties appearing on the general ballot [to] demonstrate a significant, measurable quantum of community support." *American Party of Texas v. White,* 415 U.S. 767, 782 & n. 14, 94 S.Ct. 1296, 1307 & n. 14, 39 L.Ed.2d 744 (1974). The candidate's preliminary demonstration of a significant modicum of support advances the state's legitimate interest of "avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971).

States have a legitimate interest in insuring that candidates have significant community support before appearing on the ballot. This is the "logical justification" driving Section 7–10's requirement that petition circulators be registered voters in the candidate's nominating district. The State has presented four ways that Section 7–10 insures a modicum of community support for the candidate. It is likely that if a candidate cannot find enough circulators to help his campaign that are also registered to vote in the nominating district, then significant support for the candidate does not exist within the relevant community.

The Illinois Senate debate surrounding the passage of the registered circulator requirement further supports the contention that the State was attempting to limit frivolous candidates on the ballot and insure community support. *Illinois State Senate Debate,* May 22, 1979, at 213–223. Senator Margos noted this restriction would prohibit "people from out of state coming in to [circulate] petitions." *Id.* at 221. Senator Daley, speaking in favor of the registration requirement, appears to cite at least one instance where a candidate "took hundreds of young people across the State and sent them into areas where [they were] not registered voters" in order to circulate petitions. *Id.* at 219. While Senator Netsch spoke against the registration requirement, she noted the point of requiring petitions is "intended to ... represent enough trouble for the person ... seeking office that [there will not be] a lot of frivolous candidates." *Id.* at 220. After debate on the restriction was completed, it was voted on and passed 37 to 13.

The State has presented a "logical justification" for Section 7–10. The Seventh Circuit has found that the state's interest in insuring community support for a candidate before he or she is placed on a ballot is both "compelling" and "vital." *Rednour,* 108 F.3d at 774. Further, Section 7–10 insures that a candidate's campaign will not be primarily supported or managed from outside of Illinois. Whether Section 7–10 actually achieves its purposes is not a relevant inquiry, as empirical support is unnecessary to justify a state's regulation. The fact the State has presented a "logical justification" is sufficient to validate Section 7–10.[5]

---

that circulators be registered in the candidate's political division did not exist.

**5.** The plaintiffs do not present a persuasive rebuttal to the State's justification. They argue the State's interest that candidates have actual voter

### Conclusion

The State has provided a logical, compelling justification for Section 7–10's restriction requiring circulators be registered in the candidate's nominating district. The regulation simply requires candidates to preliminarily demonstrate a modicum of public support to insure an orderly electoral process. This justification outweighs the slight burden of the regulation on the plaintiffs' First and Fourteenth Amendment rights. Accordingly, summary judgment is granted for the defendants.

support is simply "not relevant." (Pl. Reply at 3). The plaintiffs' argument that a similar provision was found unconstitutional in New York is in error. *Rockefeller v. Powers,* 917 F.Supp. 155 (E.D.N.Y.1996). In affirming the District Court in *Rockefeller,* the Second Circuit found that a New York requirement that a circulator belong to the party from which the candidate was seeking a nomination and reside within the nominating candidate's district was one of a "host of rules" that made getting on the ballot more difficult. *Rockefeller v. Powers,* 78 F.3d 44, 45 (2nd.Cir.1996). When these rules were combined with four other oppressive requirements that limited access to the ballot, the court found that the total combination of requirements "substantially burdened" the candidates and violated the First Amendment. *Id.* The court never discussed or determined the constitutionality of the circulator restriction, which, since it required both party affiliation and district residency was actually more oppressive than the regulation currently before this court.